MARY STOUT, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

TRIAL: Instructions—Unsupported Allegation of Negligence. An un-
1  supported material assignment of negligence must not be submitted to the jury.

TRIAL: Instructions—Nonproximate Negligence. An assignment of
2  negligence which is in no degree the proximate cause of the injury in question must not be submitted to the jury.

TRIAL: Instructions—Limiting Purpose of Testimony. A party who
3  introduces the contradictory statements of a witness for, apparently, the sole purpose of impeachment, and leads the court into so instructing, may not thereafter assign error on the failure of the court to submit the statements as "declarations against interest."

*Appeal from Keokuk District Court.*—H. F. WAGNER, ·Judge.

NOVEMBER 15, 1924.

ACTION for personal injuries sustained by plaintiff in alight-

ing from one of the passenger trains of the defendant. A verdict was returned for the plaintiff, and the defendant appeals.— *Reversed.*

*J. G. Gamble, A. B. Howland,* and *Stockman & Baker,* for appellant.

*Willcockson & Willcockson,* for appellee.

FAVILLE, J.—On July 5, 1920, appellee was a passenger on the train of appellant which arrived at the station in Des Moines at about 10:30 P. M. July 4, 1920, fell on a Sunday, and the celebration of the holiday was held, generally, on July 5th. The train upon which appellee was a passenger was crowded with people. Appellee, accompanied by another woman, rode in the smoking car, the ladies' coach on the train being crowded with passengers at the time. The smoking car in which appellee rode was, as we understand it, attached next to the baggage car in the train. When the train stopped at the station at Des Moines, the conductor and train crew took their places at the rear end of the smoking car and at the front end of the passenger car, next to it. There was no employee stationed at the front end of the smoking car. The vestibule at the front end of the smoking car was closed when the train arrived at the station, and the vestibule platform was down, closing the steps in such a manner that passengers could not pass from the car to the platform. Some passenger on the train, however, raised the vestibule platform and opened the vestibule door at the front end of the car, and a number of the passengers in the smoking car made their exit from the train through this door, appellee being among the number. She preceded the woman who accompanied her. She went down the steps of the coach, and in stepping from the bottom step to the platform, fell and fractured the femur bone of her left hip. She was, at the time of the injury, past 89 years of age. The fractured bone united, resulting in a shortening of the left limb. The jury returned a verdict for appellee for $3,250.

I. One ground of negligence alleged by appellee and sub-

mitted to the jury by the court was a failure to properly light the railway station platform at Des Moines where appellee alighted from the train. Sometime prior to the trial of the case, the deposition of appellee was taken. In said deposition she testified as follows:

"Q. What is the fact, Mrs. Stout, as to whether it was light enough for you to observe whether or not there was a stool there? A. Yes, there was no stool there at all. Q. Could you see whether there was or not? Was it dark or light, so you could see? A. I think it was light enough so I could see there was no stool there. Q. Well, there is lights along the edge of the depot? A. I suppose so. Q. You saw those lights there that night, did you not? A. Yes, sir. Q. Now were there any lights overhead, up over the tracks,—or did you notice? A. I didn't notice about that. Q. You hadn't seen anything of any of the trainmen around the front end of the car, had you? A. No, sir. Q. When you started down, you could see there wasn't any brakeman or conductor there? A. I could see there was no one there at all. Q. And it was light enough so that you could see there was no step box there? A. Yes, sir."

The undisputed evidence shows that, on the night of the injury in question, there was a row of electric lights extending along the edge of the depot, being about fifteen in number, and about ten or twelve feet apart. They were what are known as sixty-watt lamps. There was also one light suspended over the tracks at the east end of the baggage room, about thirty feet high from the ground, between the first and second tracks. This was a form of arc light, with a shade over it, throwing the reflection down upon the platform. All of these lights were burning at the time the train in question came into the station, as were the lights in the depot. The train arrived on the second track from the depot and about thirty feet distant from it. There was no train or other obstruction between the depot and the track upon which the train arrived. The evidence tends to show that the night was dark and cloudy, and that it had been raining some. The evidence of appellee upon the trial of the case was to the effect that it was dark about the station platform at the time she arrived, and is practically in direct conflict with

her evidence as given in the deposition respecting the conditions of lighting at the time she fell. Other witnesses in behalf of appellee testified in a general way that it was "dark" next to the train at the place where appellee alighted. There is no dispute in the record, however, as to the physical facts in regard to the manner in which the station platform was lighted by the system of lights above described.

Under this situation, we are constrained to hold that the trial court erred in submitting to the jury the question of negligence on the part of appellant in failing to properly light the station grounds. With fifteen sixty-watt lights out of doors on the edge of the depot, within thirty feet of the place where the train stood, and with no intervening obstacles, with the station itself lighted, in such close proximity, and with a large arc light suspended thirty feet above the tracks, and with other lights in the vicinity as shown by the evidence, it cannot be held that a jury question was presented as to the alleged negligence on the part of appellant·in failing to light the platform, merely because witnesses in behalf of appellee testified that, under such conditions, it was "dark" about the train at the time it arrived.

1. TRIAL: instructions: unsupported allegation of negligence.

Appellee contends that the testimony in her behalf presented a jury question with regard to the manner of the lighting of the depot platform; but the statements of these witnesses to the effect that it was "dark" about the location of the train are scarcely sufficient to carry to the jury the question of appellant's negligence in respect to the lighting of the platform, in view of the physical facts regarding the location, number, and character of the lights which the undisputed evidence shows were in place and burning at that time. Appellant owed to appellee the duty of exercising ordinary care in the manner of properly lighting its station platform. The undisputed evidence with regard to the physical facts in this regard disclosed that appellant did use such ordinary and reasonable care.

We are of the opinion that the court erred in submitting to the jury the question of negligence predicated on the claim of the insufficient manner in which the station platform was lighted.

II.   The court submitted to the jury, as one of the grounds of negligence, the following :

"That the car in which plaintiff was riding, at its front exit and the steps thereof at said exit, and the platform on which and at the place where passengers were required to alight, were insufficiently lighted."

2. TRIAL: instructions: nonproximate negligence.   Appellant complains that the court erred in submitting to the jury, as one of the grounds of negligence, the claim that the car in which appellee was riding, at its front exit, and the steps at said exit, were insufficiently lighted.

We are of the opinion that the court was not warranted in submitting the failure to sufficiently light the front exit of the car and the steps thereof, for the reason that there is no contention that, even if the front exit and the front steps of the car were not sufficiently lighted, the failure so to do was the proximate cause of the injury to appellee.

III.   Appellee testified as a witness in her own behalf, upon the trial of the cause.   Appellant, on cross-examination, interrogated appellee with regard to her testimony at the time her 3. TRIAL: instructions: limiting purpose of testimony.   deposition was taken in the cause.   Appellant then offered in evidence the portions of said deposition that had been so called to the attention of appellee.   The court instructed the jury that it could take into consideration the evidence as to statements made by appellee out of court, if at variance with her statements made before the jury, upon the question of impeachment, and in determining her credibility as a witness.

Appellant does not contend that the instruction as given was erroneous, or that the evidence was not proper for the consideration of the jury on the question of impeachment, but claims that it was entitled to have the jury consider the evidence for more than this; that the evidence so offered from the deposition of appellee showed admissions of appellee against her interest; and that appellant was entitled to have the jury consider them as such, as well as for the purpose of impeachment.

One difficulty with appellant's contention in this respect is that no request was made to the trial court that the jury be

instructed that the statements contained in the deposition so offered in evidence by appellant were to be regarded for any other purpose than that of impeachment. The foundation was properly laid, and the deposition obviously offered for the purpose of impeachment of the witness. We think that the court did not err, under these circumstances, in failing to instruct the jury that they had a right to consider the deposition for the additional and distinct purpose of its being admissions against interest on the part of appellee. No such instruction was requested; and, in fact, the record fails to disclose that there was any claim made by appellant during the trial that the evidence was available to it for any other purpose than that of impeachment of the witness. The instruction as given was correct, and, under all of the circumstances disclosed, the court did not err in failing to amplify it and enlarge it in the manner now contended for by appellant.

IV. Appellant contends that the verdict is excessive.

In view of a possible retrial of the case, and the necessity of a reversal upon other grounds, we express no opinion whatever in relation to the amount of the verdict.

For the errors pointed out, the judgment of the trial court must be, and it is,—*Reversed.*

ARTHUR, C. J., and EVANS and STEVENS, JJ., concur.