No. 14,734.

THOMPSON *v.* WOLFF.
(115 P. [2d] 649)

Decided June 16, 1941.   Rehearing denied July 21, 1941.

Mr. IRVING L. GREENWALD, Mr. MANDELL LEVY, for plaintiff in error.

Mr. WILLIAM O. PERRY, Mr. STANFORD W. GREGORY, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

SUIT by defendant in error, to whom we hereinafter refer as plaintiff, or Wolff, to enforce payment of real estate broker's commission against plaintiff in error, hereinafter designated as defendant, or Thompson. After issues were joined, the matter was submitted to the trial court who gave judgment for plaintiff. Thompson seeks reversal on a writ of error.

Thompson admits listing the property with Wolff, and another real estate man named Keezer, about November 1, 1938, and there may have been some question as to whether Wolff or Keezer, through his salesman, Heddeen, first contacted Wilkes as a prospective purchaser— Wilkes subsequently consummated a deal for the property directly with Thompson, the owner. However, Keezer assigned his claim to Wolff, plaintiff herein. The property was first listed with the brokers at $15,000, this price later being reduced by Thompson to $12,500, who so instructed the real estate agents. That both Wolff and Heddeen showed the property to Wilkes is undisputed. Wolff, particularly, made a detailed inspection of the property with him, figuring the cost of certain repairs and the amount of income. Wolff also showed other property to Wilkes, concerning which Wilkes testified: "The property Mr. Wolff showed me didn't compare with this." Wolff testified that after showing the property in question to Wilkes he immediately telephoned Thompson, his testimony on that point being as follows:

"I told him I had shown the property to a man named L. L. Wilkes, and he acted as if he didn't hear me very well on account of the machinery [Thompson operated a machine shop]. I said specifically, 'Better write this down. Have you a slip of paper?' 'Yes, I have.' I says, 'All right, write this name down so you are sure you have got it.' He said, 'All right, I have got it. You will not have to worry; I will take care of your commission on this property.' * * * Yes, I spelled it for him. * * * I gave him the address and 'phone number."

Thompson admits the telephone conversation, but testified he "does not remember" the details, or that Wilkes' name was mentioned.

Wolff further testified that he had no further conversation with Thompson, but did speak to Wilkes several times after that concerning the property, although he never obtained an offer for it from Wilkes.

Heddeen testified that the property was referred to him on November 8, 1938, and that he met Mr. and Mrs. Wilkes there by appointment that afternoon for the purpose of showing the premises; that he then returned to the office where he called Thompson on the telephone to inform him that he had shown the property to Wilkes; that there were no further developments regarding the deal until about December 1st, when in checking up on the status of the property with Thompson he was informed that it was off the market.

A few days later—December 11 (Sunday)—Thompson, as owner, inserted an advertisement in the Denver Post offering the property for sale. Wilkes, in response to the advertisement, contacted Thompson and they ultimately closed a deal for the sale of the property at a price of $10,250 during the first part of January, 1939.

The trial court allowed the usual commission of five per cent on the sale price of $10,250, amounting to $512.50.

No good purpose would be served by a consideration of any particular assignment of error because counsel for defendant admittedly base their right to reversal on the case of *Babcock v. Merritt*, 1 Colo. App. 84, 27 Pac. 882. In that case, however, as is pointed out in the opinion, "the offer of $7,000 cash, net for the property, would not be entertained unless the sale was made and the transaction closed before appellant left Denver for Omaha, which was to occur, and did, a day or two after the last interview." There was no such restriction as to time in plaintiff's employment here, and Thompson failed to notify plaintiff that the property was off the

market. While there may not have been a basis for a case of fraud, the circumstances justify the inference that Thompson was not acting in good faith when he inserted the advertisement in the paper, but adopted that method primarily to circumvent the payment of any commission.

While it is true that Thompson sold the property for less than the last figure quoted to Wolff ($12,500), Wolff had every reason to believe from Thompson's statements that $12,500 was not the low figure. This is indicated by Thompson's testimony, as follows: "At first when I listed the property with them I asked around $15,000 for it. * * * I cut it down gradually. It was hard to sell, and I cut the price to get rid of it."

Another matter worthy of mention here is, that the newspaper advertisement was not the procuring cause of the sale, in that Wilkes admitted that it only directed him to property which he had seen before. Wilkes also admitted that Wolff telephoned him several times concerning the property just prior to the insertion of the advertisement in the paper.

We think the plaintiff in this case satisfied the rule restated in *Dickey v. Waggoner,* 108 Colo. 197, 114 P. (2d) 1097, and we should like to add to the cases therein cited that of *Houston v. H. W. Wolff & Son Inv. Co.,* 94 Colo. 73, 28 P. (2d) 255.

Judgment affirmed.

MR. CHIEF JUSTICE FRANCIS E. BOUCK, MR. JUSTICE OTTO BOCK and MR. JUSTICE HILLIARD concur.