No. 19,082.

DONALD P. DUNKLEE, ET AL. *v.* E. A. SHEPHERD, ET AL.

(358 P. [2d] 25)

Decided December 30, 1960.

Messrs. DUNKLEE & DUNKLEE, Mr. W. RUSSEL EDDY, for plaintiff in error.

Mr. ANTHONY F. GRECO, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE HALL.

THE parties appear here in the same order as in the trial court. We refer to them as plaintiffs and defendants.

Plaintiffs in their complaint alleged that defendants are indebted to them in the sum of $4,800, being a commission due them pursuant to the terms of an "Exclusive Right to Sell" contract entered into by the parties March

5, 1958. Defendants answered generally denying the allegations of the complaint.

On trial to the court after hearing all of the evidence, the trial court entered judgment dismissing the complaint. Plaintiffs are here by writ of error seeking reversal.

There is no substantial conflict in the evidence. From the record before us it appears that on March 5, 1958, defendants were, and for several years prior thereto had been, the owners of four unimproved lots in the Cherry Creek Shopping Center area in Denver, more particularly described as:

"Plot numbered four (4) in Block numbered (70) Harmons Subdivision."

On the aforementioned date the parties entered into what is designated as: "Exclusive Right to Sell" contract, whereby defendants agreed that plaintiffs should, for a period of 30 days, have the exclusive right to sell the above described property for $80,000.00, and in the event the plaintiffs procured a buyer *ready and willing to purchase while the contract was in force,* to pay a commission of 6% of the purchase price. (Other pertinent provisions of the agreement will be referred to later in this opinion.)

Within four or five days after the execution of this contract the plaintiffs caused to be prepared and placed on vacant lots, then owned by Redding-Miller Corporation, a *For Sale* sign. These lots were adjacent to the defendants' lots described in the listing contract, the sign being placed thereon by mistake.

Very soon after placing this sign on the wrong lots, a telephone conversation was had between plaintiff Stanley and Howard H. Reynolds, Secretary of Redding-Miller Corporation; Stanley and Reynolds are in disagreement as to who called the other, but they are in agreement as to the purpose of the call and the substance of the conversation. The call was for the purpose of making known to the one called that the For Sale sign

was on the wrong lot. That fact having been settled, and Stanley having offered an apology for his mistake and having agreed to remove the sign, then told Reynolds that plaintiffs had defendants' lots for sale for $80,000.00 and that Redding-Miller should purchase the same. To this suggestion Reynolds made no response. The foregoing reflects the sum total of plaintiffs' efforts during the thirty-day period of the contract to sell the property to Redding-Miller Corporation.

The record also contains testimony to the effect that plaintiffs caused the property to be advertised for sale in a "block ad" with other property; that several prospects were contacted by telephone and the property listed on:

"The Co-operative real estate exchanges of which I [Donald Dunklee] belong to three, and more than that there were 180 different brokers in the City of Denver working on this property through my office * * *."

These efforts to " * * * procure a buyer * * * ready and willing * * * " were fruitless and the contract made no provision for rewarding *effort.*

█ The thirty-day listing expired not later than midnight April 4, 1958. Plaintiffs never did procure a buyer, they never showed the property to anyone, consequently they cannot sustain any claim for a commission predicated on a sale of the property during the thirty-day period, for there was no such sale.

On April 7, 1958, defendants sold the property to Redding-Miller Corporation for $70,000.00. Promptly thereafter plaintiffs demanded that the defendants pay to them a commission on the sale, which demand was denied, and this action to recover the commission was commenced May 2, 1958.

Plaintiffs contend that they are entitled to recover under the above facts and the following provision of the contract:

"Should the property be sold or exchanged during the life of this contract or any continuation thereof, *or with-*

*in a reasonable time after the termination of the agreement, to any party to whom it was shown or with whom negotiations were initiated during the listing period, whether through you, me, or any person, I agree to pay you the commission herein provided."* (Emphasis supplied.)

▮ Counsel for plaintiffs contend that the above provision serves to extend the contract for a reasonable time beyond the termination date thereof. This contention is wholly untenable. The provision expressly contemplates and provides that the termination date may be extended by agreement of the parties in that it provides — " * * * during the life of this contract or any continuation thereof * * *." The life of the contract is by its very definite express terms limited to 30 days. The record is devoid of any evidence that the contract was ever continued. In fact, on April 8, 1958, the plaintiffs notified the defendants by letter of their efforts to sell the property, gave them a list of their "live prospects" which they should reserve out of any future listing — " * * * in case you decide not to *re-list* your property with the Dunklee Realty Company * * *."

The foregoing is incompatible with the suggestion that the listing was still in effect.

▮ The above-quoted provision of the contract might afford realtors (plaintiffs in this case) some relief when property is sold within a reasonable time after termination of the contract to (1) a party to whom it was shown, or (2) (to a party) with whom negotiations were initiated during the listing period.

▮ Plaintiffs admit they never showed the property to anyone, hence they cannot qualify under (1) supra; nor can they successfully contend that the one telephone conversation, outlined above, constituted "negotiations" for a sale of the property. Rather such conversation dealt with the removal of a *For Sale* sign placed on Redding-Miller Corporation's property without authority.

Black's Law Dictionary defines the word "negotiation" as follows:

"The deliberation, discussion, or conference upon the terms of a proposed agreement; the act of settling or arranging the terms and conditions of a bargain, sale or other business transaction."

Plaintiff Stanley's pronouncement over the telephone that the lots were for sale for $80,000.00 and that Redding-Miller Corporation should purchase them, coupled with Reynolds' silence, falls far short of constituting "Negotiations."

The judgment is affirmed.

MR. CHIEF JUSTICE SUTTON and MR. JUSTICE MOORE concur.