No. 20,202.

JOSEPH N. MINISSALE, D/B/A MINISSALE REALTY
COMPANY, *v.* ROBERT W. ELMER, ET AL.
(386 P. [2d] 355)

Decided November 4, 1963.

Messrs. CADDES and CAPRA, for plaintiff in error.

Messrs. HARDING and HERRMANN, for defendants in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

THE parties appear here in the same order as in the trial court and we refer to them as plaintiff and defendants.

On July 11, 1960, the defendants, being the owners of a home located at 11630 West 24th Place Circle, Lakewood, entered into a contract with the plaintiff, a real estate broker, whereby the defendants gave to plaintiff a ninety-day exclusive and irrevocable right to sell said home for $37,500.00 and on terms in said agreement set forth. In addition, the contract provided: " * * * In case of any sale or exchange of same within that time, either by the undersigned owner, the undersigned broker, or by any person, *or in the subsequent 90 days to any party with whom the said broker negotiated and whose name was disclosed to the owner by the broker during the listing period* [original 90 days], I hereby agree to pay said broker 6% of the selling price for the services." (Emphasis supplied.)

No sale of the property was made during the ninety days immediately following July 11, 1960. The defendants did sell the home to Mr. and Mrs. Bowers on November 7, 1960, sale price being $35,000.00.

Plaintiff seeks to recover from defendants broker's commission in the sum of $2250.00 (6% of the listed price of $37,500.00), claiming that it had, prior to October 9, 1960 — the time of expiration of the initial ninety-day period — *negotiated* with the Bowers for the sale of the property, and *disclosed* to the defendants the names of the Bowers and, on account of having so done, thereby became entitled to the commission as provided in the contract.

The defendants denied that plaintiff had negotiated with the Bowers and denied that plaintiff had ever disclosed to them the Bowers' names.

Trial of the foregoing issues was to the court which made FINDINGS containing the following:

"THE COURT FURTHER FINDS That the Plaintiff's agent, Mr. G. E. Armintrout, did not, under the law sufficiently 'negotiate' with Royce L. Bowers and/or Betty Lou Bowers within ninety days after July 11, 1960, concerning the sale of the premises known and

numbered as 11630 West 24th Place, Lakewood, Colorado, and

\* \* \*

"THE COURT FURTHER FINDS that neither the Plaintiff nor his agent, G. E. Armintrout, produced a buyer ready, willing and able to purchase the property within ninety days after July 11, 1960, on the terms set forth in the contract, marked Exhibit 'A' and admitted into evidence."

Plaintiff's evidence was to the effect that following the execution of the listing agreement he posted "for sale" signs on the property, frequently advertised the property for sale in two Denver newspapers of wide circulation, showed the property to many persons who came to the property for the purpose of looking at it, but failed to produce a buyer during that period.

Plaintiff's evidence further disclosed that a Mrs. Bowers, during the initial ninety-day period, saw the "for sale" sign on the property and on a certain Sunday during said period stopped at the property. She there met one of plaintiff's salesmen who showed her through the home. Mrs. Bowers liked the home and expressed her desire to have it, but told the agent that the price was beyond her means and that of her husband, that she knew her husband would not be interested.

On one or more later occasions plaintiff's agent called Mrs. Bowers on the telephone and talked to her about the house, at which time, under instructions of her husband, she told the agent, "tell the man no, we can't afford it."

Plaintiff's agent testified that after showing the property to Mrs. Bowers he left a note in the kitchen of the home, then occupied by defendants, giving the name and address of Mrs. Bowers. That on that evening she telephoned the defendant Ann S. Elmer and told her about Mrs. Bowers looking at the house.

Much of this testimony was disputed by Mrs. Bowers,

and the defendants denied that they ever received the note giving Mrs. Bowers' name and address and denied that plaintiff's agent had ever called either of them about any prospect. The evidence is undisputed that the Bowers and defendants had never met until about thirty days after the expiration of the initial ninety-day period, and that nothing that plaintiff did brought the Bowers and defendants together or induced the sale.

At the close of all the testimony the court made findings, sustained defendants' motion to dismiss and entered judgment for defendants.

Plaintiff is here by writ of error seeking reversal.

The problem which we have to review is whether the evidence supports the finding of the trial court that the sale by the owners was not to " * * * any party with whom the * * * broker [plaintiff] negotiated * * * during the listing period [the initial 90 days] * * * ."

We conclude that the finding of the trial court was correct and that the testimony would not support a contrary finding.

The mere showing of the property to the wife did not constitute negotiation. The wife notified the agent that they could not buy. When called on the telephone by the agent she complied with her husband's request to tell the man "No." Mrs. Bowers was looking, the salesman was showing, and that is as far as it went.

Counsel for plaintiff contend that *Thompson v. Wolff,* 108 Colo. 259, 115 P. (2d) 649, is controlling here, and state that "the facts in this case are peculiarly similar to the facts in the Thompson case."

There it was very clear that the owner and purchaser deliberately bypassed the broker in order to avoid paying a commission. In *Thompson,* supra, this court said:

" * * * While there may not have been a basis for a case of fraud, the circumstances justify the inference that Thompson was not acting in good faith when he inserted the advertisement in the paper, but adopted

that method primarily to circumvent the payment of any commission.

* * *

"Another matter worthy of mention here is, that the newspaper advertisement was not the procuring cause of the sale, in that Wilkes admitted that it only directed him to the property which he had seen before. * * *."

Here the trial court made findings, well supported by the evidence, which point up facts entirely different than the facts in Thompson. The trial court found:

"THE COURT FURTHER FINDS That neither the Defendants nor Royce L. Bowers and Betty Lou Bowers contacted one another at any time during the ninety day exclusive listing, commencing July 11, 1960, and terminating October 9, 1960, and therefore there could be no collusion between the Defendants and the subsequent purchasers, Royce L. Bowers and Betty Lou Bowers, who met and talked for the first time on the evening of November 7, 1960, * * * ."

Counsel for plaintiff also rely on *Werner v. Hendricks,* 121 Pa. 546, 182 Atl. 748. There the court had to determine whether a sale was made "to anyone with whom the broker had heretofore been negotiating." There the court said:

" * * * To merely call attention to the route without further discussing the details, which necessarily must follow for the consummation of the transaction or sale, can hardly be called a negotiation. Unless the discussion can be brought to the point whereby the interest of the proposed buyer can be aroused or the terms of the sale discussed, it cannot be classified as a negotiation. Negotiation presupposes a mutual interest in the subject-matter and merely directing one's attention without further enlisting interest or discussion falls far short of negotiations. The mere offer or solicitation, which meets with prompt refusal or rejection having no effect whatever upon the subsequent purchase of the route,

cannot be regarded as negotiations within the meaning of the contract."

Counsel also rely on *Mills v. Hunter,* 103 Cal. App. (2d) 352, 229 P. (2d) 456. There it is said:

" * * * Under the findings, which are supported, the broker negotiated with Langsam during the 10-day term of the contract, secured a written offer from him for $71,500, communicated this offer and the name of the purchaser to appellant, and then appellant, within less than three weeks from the expiration of the 10-day term of the contract, through another broker, sold the property to Langsam for $71,500, the identical price first offered through Milton Meyer & Co. While the clause might not be applicable had the broker merely shown the property to a prospective purchaser and failed to receive an offer from him, if it is to have any meaning at all it must be held that it applies where the broker has produced a purchaser ready, able and willing to buy at a fixed price and the owner sells at that price to that purchaser within the 90-day period. * * * ."

It would seem that holdings in the foregoing cases and the language found therein are contrary to plaintiff's contentions.

A case more nearly in point is *Dunklee v. Shepherd,* 145 Colo. 197, 358 P. (2d) 25. There this court said:

"Black's Law Dictionary defines the word 'negotiation' as follows:

'The deliberation, discussion, or conference upon the terms of a proposed agreement; the act of settling or arranging the terms and conditions of a bargain, sale or other business transaction.'

"Plaintiff Stanley's pronouncement over the telephone that the lots were for sale for $80,000.00 and that Redding-Miller Corporation should purchase them, coupled with Reynolds' silence, falls far short of constituting 'Negotiations.' "

Here we have the agent suggesting that Bowers buy for $37,500.00. Bowers were not silent, as was the pros-

pective purchaser in *Dunklee*, supra, but Bowers answered and said "No."

The judgment of the trial court is correct and is therefore affirmed.