TOM VINT, d/b/a VINT REALTY COMPANY, appellant, v. CARL ASHLAND, appellee.

No. 51821.

(Reported in 139 N.W.2d 457)

JANUARY 11, 1966.

Finley & Teas and L. L. Boomhower, all of Mason City, for appellant.

Boyle & Schuler, of Clear Lake, for appellee.

STUART, J.—Plaintiff has appealed from a judgment on a jury verdict against him in an action to recover a real-estate commission. He is a licensed real-estate broker specializing in motels. Defendant, owner of a motel in Clear Lake, gave plaintiff an exclusive listing for six months from the date of the written contract "and thereafter until revoked by thirty days notice in writing".

Other pertinent provisions of the contract prepared by plaintiff are as follows:

"In consideration of the services so to be performed by said agent in making such sale or finding and sending to the owner a satisfactory buyer or being instrumental in any manner whatever in selling or causing a sale or transfer of said premises, the undersigned owner agrees to pay said agent as commission 10 percent on the price obtained if the property is sold or exchanged during the continuance of this agreement."

(Defendant's motel was then described and priced at $82,-500.)

"If the premises are sold within one year after the termina-

tion of said agency but to a buyer with whom said agent had negotiated prior to said termination, then and in either such case the agent shall be entitled to his commission hereunder."

No sale was made during the six-month period and defendant gave the required written notice terminating the exclusive agency as of December 26, 1961. On December 29, 1961, defendant sold the motel to a party first contacted through plaintiff for $50,000. Plaintiff claimed the sale was made "to a buyer with whom he had negotiated" prior to the termination of the exclusive listing and brought suit to collect his commission when defendant refused to pay.

Plaintiff assigns three errors: (1) failure of the trial court to direct a verdict for plaintiff; (2) erroneous instruction as to the meaning of "negotiated" and (3) the failure to give a cautionary instruction limiting the purpose of a certain exhibit.

■ I. The first two assigned errors are interrelated and depend upon the meaning of negotiated. Before we can determine whether the evidence is such that it shows plaintiff "negotiated" with the purchaser as a matter of law, we must define negotiated as used here. For that reason we will first consider whether the trial court's Instruction No. 6 correctly defined the term. The jury was told: "* * * the term 'negotiated', when used in an exclusive listing contract and as used in these instructions, means that the efforts of the broker, in his dealings with a prospective purchaser, whether through telephone conversations, letters or other communications, must be such that the interest of the prospective purchaser is created or aroused to the point that the prospective purchaser would be considered a likely purchaser at the time of the termination of the listing contract.

"The term 'likely' when used in these instructions means 'probable' or 'reasonably to be expected'."

Plaintiff claims the instruction was not proper because the contract itself defined negotiated. He claims the provision setting forth his duties during the period of the exclusive listing also defines negotiated in the later paragraphs and that he negotiated with the prospect if he found him or sent him to the owner or was instrumental in any way whatever in causing the sale.

We do not so read the contract. It was prepared by plaintiff and parties agree it is to be construed against him, if construction is necessary. We do not believe it is clear and unambiguous that plaintiff's duties during the term of the exclusive listing define negotiations which entitle plaintiff to a commission for a sale made by someone else after the exclusive listing has been terminated. The two clauses appear in separate paragraphs of the contract and are not connected by any terms appearing therein. The first clause set forth the consideration which entitled the agent to a commission if the property was sold during the period of the contract or any continuation. The contract was to continue in effect until the required notice of termination was given. The year period in which the broker was entitled to a commission if a sale was made to a party with whom he had negotiated commenced after the listing was terminated and was designed to protect him from a sale to a party with whom he had "negotiated". There is nothing in the contract to equate negotiate with the broker's duties during the exclusive period.

Plaintiff also contends "negotiated" has a plain meaning known to the jury and it was unnecessary and improper to attempt to define the term. He claims the error was compounded by the use of "likely purchaser" which is less clear and less familiar than negotiated.

We do not agree the meaning of negotiated is so plain a defining instruction is not required. It is a broad term with many meanings and connotations. The appropriate definition must be determined by the context in which it is used. Consequently, the cases which are most helpful are those in which exclusive real-estate listing contracts have made the payment of commission after the term has expired dependent upon the sale being to one with whom the broker "had negotiated". Such line of cases, though limited in number, exists.

There do not appear to be any Iowa cases in point and the trial court and defendant rely primarily on the case of Munson v. Furrer, 261 Wis. 634, 53 N.W.2d 697. The court there quotes from 12 C. J. S., Brokers, section 88, note 43, Bullis & Thomas v. Calvert, 162 La. 378, 110 So. 621, 623, and Werner v. Hendricks, 121 Pa. Super. 46, 182 A. 748, 749, 750, all of which sup-

port the requirement that the prospect be a "likely purchaser" before it can be said the agent "negotiated".

"* * * within the original term of the contract, the word 'negotiated' means that the efforts of the broker to interest a prospect must have proceeded to the point where the prospect would be considered a likely purchaser." Munson v. Furrer, 261 Wis. 634, 639, 53 N.W.2d 697, 699.

In the Louisiana case, the court concluded "plaintiffs were not negotiating with Morgan during the term of the contract * * * in such manner as to interest him as a likely purchaser thereof, or beyond the mere fact of advising him that the land was for sale but could not be purchased for the price which he seemed willing to give for it." Bullis & Thomas v. Calvert, supra, loc. cit. 386 of 162 La.

In the Werner case, a newspaper route rather than the real estate was involved, but the exclusive listing provided for a commission if it was sold "to anyone with whom the broker had heretofore been negotiating." There, the court said:

"To merely call attention to the route without further discussing the details, which necessarily must follow for the consummation of the transaction or sale, can hardly be called a negotiation. Unless the discussion can be brought to the point whereby the interest of the proposed buyer can be aroused or the terms of the sale discussed, it cannot be classified as a negotiation. Negotiation presupposes a mutual interest in the subject matter and merely directing one's attention without further enlisting interest or discussion falls far short of negotiations. The mere offer or solicitation, which meets with prompt refusal or rejection having no effect whatever upon the subsequent purchase of the route, cannot be regarded as negotiations within the meaning of the contract." Werner v. Hendricks, supra, loc. cit. 121 Pa. Super. 49.

In Minissale v. Elmer, 153 Colo. 383, 384, 386, 386 P.2d 355, 356, 357, the exclusive listing provided for a commission if the property was sold "in the subsequent 90 days to any party with whom the said broker negotiated and whose name was disclosed to the owner by the broker during the listing period." The eventual purchaser saw the For Sale sign, was shown the house by

broker's salesman, liked the house and expressed a desire to have it, but told the agent the price was beyond her means and that she knew her husband would not be interested. The court found no collusion between seller and purchaser, who did not meet until 30 days after the exclusive listing expired. The court said: "The mere showing of the property to the wife did not constitute negotiation. The wife notified the agent that they could not buy. When called on the telephone by the agent she complied with her husband's request to tell the man 'No'. Mrs. Bowers was looking, the salesman was showing, and that is as far as it went." See also Dunklee v. Shepherd, 145 Colo. 197, 201, 358 P.2d 25, 27.

In Delbon v. Brazil, 134 Cal. App.2d 461, 285 P.2d 710, the California court approved the definition of negotiated set forth in Munson v. Furrer and affirmed the trial court which found the agent had negotiated for the sale of the property. There was evidence of more effort on the agent's part there than here. It was pointed out that whether a prospect would be considered a likely purchaser would ordinarily be a fact question for determination by the jury.

Plaintiff does not cite any cases involving exclusive real-estate listing contracts which offer a different definition of negotiated. The exclusive listing cases they cite provide for a commission in the event of a sale to a person to whom the property was "quoted" "recommended" "submitted" or other similar phrases. We refer specifically to Nichols v. Pendley, Mo. App., 331 S.W.2d 673, 676, which provided for a commission if a sale was made "to anyone to whom said property was submitted". The seller cited the line of cases hereinabove referred to. The court said:

"Without attempting to distinguish them individually, we observe that in each of them the contract expressly provided for commission to be payable if the sale was completed to a person with whom the broker had been 'negotiating'. In those and similar cases it is held generally that 'negotiating' implies a situation where the interest of the buyer has been aroused to the point that the person may be considered a likely purchaser.

"Negotiation implies a discussion of terms, a bargaining. * * * The very word carries the connotation of steps near to

completion. * * * It is farther down the road toward accomplishment than is 'submit'."

Plaintiff's cases which define negotiate for the most part relate to licensing acts for real-estate brokers, or security salesmen. A broader definition than that contained in the exclusive listing cases is required to accomplish the purpose of these acts, which is the licensing and regulation of persons acting as salesmen or brokers.

Plaintiff also cites many cases from Iowa and other jurisdictions which hold a real-estate agent is entitled to a commission if he is "the procuring cause" of a real-estate sale. He recognizes these cases are not controlling as the parties here are bound by the terms of the contract, not the standards fixed by the courts. They are cited on the theory that we should not "require him to do more things under the requirements of 'had negotiated' than the Iowa Court has required in the matter of proving oneself to be 'a producing or procuring cause'." We believe it is more nearly accurate to say the trial court's definition of negotiation requires him to prove something different, rather than to prove more. It is true that he must prove his dealings had proceeded further to prove the prospect was a likely purchaser than would be necessary to prove he was a "procuring cause", but the issue of a good faith withdrawal of negotiations which would deprive the broker of a commission is eliminated by the contract terms. Kellogg v. Rhodes, 231 Iowa 1340, 4 N.W.2d 412. This has frequently proved fatal to claims for real-estate commissions.

The definition of "negotiated" set forth in Instruction No. 6 seems to be that which is generally accepted by the jurisdictions which have had the occasion to consider its use in exclusive real-estate listing contracts. The authorities presented by plaintiff are not in point and are not persuasive. We approve of the trial court's definition and instruction.

II. Plaintiff claims a verdict should have been directed in his favor. He had the burden of proof and "In the absence of an admission by the opposite party, it is seldom that a party having the burden establishes his claim as a matter of law." Kellogg v. Rhodes, 231 Iowa 1340, 1342, 4 N.W.2d 412. The

record here does not justify a directed verdict for plaintiff under the approved definition of negotiated. The facts hereinafter set forth are undisputed, but it is obvious that different inferences may be drawn therefrom. This makes a fact question. Citation of authority is not necessary. Rule 344(f)17.

After plaintiff obtained the exclusive listing he advertised this motel along with others in several newspapers. Mr. Gordon L. Christensen on about July 31, 1961, called plaintiff to inquire about this motel and two others. The telephone conversation lasted five to six minutes. He sent pictures and statistical information to him concerning all three motels. Mr. Christensen went to see defendant's motel. It was not the type he was interested in. He was never interested at $82,500.

On the 21st of November, 1961, defendant had sent notice to plaintiff cancelling the listing as of December 26, 1961. Mr. Christensen next saw the motel late in November 1961. The price was the same and he was not interested. Defendant told him he had notified plaintiff he was going to take the listing from him.

On December 11, 1961, plaintiff sent a form letter to about forty persons including Mr. Christensen concerning this property. On the 28th or 29th defendant called Christensen and told him he would like to get the motel sold and if he was the least bit interested to come up and try and buy it. Christensen went to Clear Lake the 29th, made an offer of $50,000 and, after negotiating the terms for most of the day, contracted to buy it for that price.

Plaintiff testified he had no contact with Christensen except that set out above and would not know him by sight.

While the whole proceedings would justify a conclusion that Christensen was a "likely purchaser" at the time the contract was terminated, we cannot say the evidence establishes this fact as a matter of law. The matter was properly submitted to the jury.

Plaintiff quotes extensively from Messick v. Powell, 314 Ky. 805, 236 S.W.2d 897, 27 A. L. R.2d 1341. This case, like Munson v. Furrer, supra, involved a dispute among the seller and two different real-estate agents over the commission. The Messick case does not reach the problem before us here. In that case

plaintiff had an exclusive right to sell which provided for a commission if the property was sold to a person with whom he had "already had negotiations". A demurrer to a petition so alleging was sustained. The appellate court held the petition stated a cause of action and reversed. We do not know what evidence might have been produced to support the allegation of negotiations. We do not know how Kentucky would have defined negotiations. It is no authority that what was done in the instant case amounted to "negotiations" as a matter of law.

III. Plaintiff also claims the court erred in failing to limit the jury's consideration of the Notice of Revocation of the Listing Contract, Exhibit 10. After terminating the contract, the notice concluded with the following paragraph:

"I respectfully request that you send to me by return certified mail the name and address of any and all person or persons with whom you negotiated for the sale of my premises above described during the period that said Listing Contract was in full force and effect. Unless you send to me within thirty (30) days from the date hereof the name and address of those persons with whom you negotiated for the sale of my premises during the period that said Listing Contract was in full force and effect, I will then consider and determine that you did not negotiate with anyone whomsoever for the sale of said premises, and I will not have been put on notice of prospects obtained by you."

In his exceptions to the court's instructions plaintiff said: "Plaintiff further respectfully objects to the court's failure to instruct the jury that the defendant's exhibit received in evidence which purport to place a duty upon the plaintiff of furnishing a list of names to the defendant shall not be considered for that purpose and that the plaintiff has no duty under this record or his contract to furnish a list of the names of prospects to the defendant."

Defendant does not argue a limiting instruction would not have been proper, but claims plaintiff has no standing to complain because (1) he did not object to and acquiesced in the admission of the exhibit into evidence without a request that its consideration be limited, (2) no limiting instruction was requested.

At the time the evidence was admitted and requested instructions submitted, the issue of estoppel pleaded by defendant was still in the case. The paragraph in question was material to that issue. The evidence was not objectionable and not subject to limitation at that time. On plaintiff's motion, the trial court withdrew the issue of estoppel from the jury. It was then plaintiff took exception to the instructions as a whole because they did not limit the consideration of Exhibit 10, the notice of termination. No further requested instructions were submitted.

Although we determine for reasons hereinafter stated there was no prejudice here, we believe a limiting instruction was proper and that it was not necessary to submit a requested instruction as proper exception was taken to the instructions as a whole. In view of the authorities cited by defendant, we deem it advisable to elaborate somewhat on the matter.

■ The primary purpose of rule 196, Rules of Civil Procedure, is to assure that the attention of the trial court is specifically directed to claimed deficiencies in his instructions either by requested instructions or objections and exceptions to his instructions so that he might have the opportunity to correct them prior to submission and avoid reversible errors which might otherwise occur. Hoffman v. Monroe Welding Supply Co., 253 Iowa 591, 113 N.W.2d 237, 241; Briney v. Tri-State Mutual Grain Dealers Fire Ins. Co., 254 Iowa 673, 117 N.W.2d 889, 897; Wilson v. Kouri, 255 Iowa 348, 122 N.W.2d 300, 302.

Three cases, Kircher v. Town of Larchwood, 120 Iowa 578, 95 N.W. 184; Hall v. City of Shenandoah, 179 Iowa 1192, 162 N.W. 575; Stout v. Chicago, R. I. & P. Ry. Co., 198 Iowa 1017, 200 N.W. 596, cited by defendant, preceded the Rules of Civil Procedure. Objections to instructions were then made after they had been submitted to the jury and the only method of alerting the trial court to the necessity for a limiting instruction on admissible evidence was by a requested instruction. For that reason, failure to limit the consideration of the evidence was not reversible error in the absence of such request.

■ The recent cases of Kiger v. Meehan, 253 Iowa 746, 752, 753, 113 N.W.2d 743, 747, 748, and Miller v. Town of Ankeny, 253 Iowa 1055, 114 N.W.2d 910, 913, do not resolve the problem

we have here. In those two cases the court's attention was not directed to the need for a limiting instruction in any manner. In Kiger, we do say: "In any event, we think the rule that a request must be made in order to predicate error on an omission to give a limiting instruction is well established in Iowa, and we adhere to it." However, a review of what else is said in that opinion makes it clear that "request" as therein used is not synonymous with "Requested Instructions". We say: "The real question becomes whether the *exceptions* taken to No. 10 were a *sufficient request, or an alerting of the trial court* to the need, for an instruction on the limited purpose for which the testimony here considered was received."

We say further: "The party who thinks a limiting instruction should be given owes a duty to the trial court to bring the point properly to its attention. Here, no request for admonition of the jury as to the effect of and limitations in the evidence was made when it was admitted; the contention was that it was inadmissible for any purpose. Nor was any request for a limiting instruction made, *and no exceptions to the instructions as a whole raised the point of failure to give such an instruction.*"

There is also a discussion of the exception to the instruction on circumstantial evidence which we determined was not sufficient to alert the court to the need for a limiting instruction.

If the absence of a requested instruction were determinative of the right to present the question on appeal, there would have been no need for the detailed discussion of the other means by which the court's attention could have been directed to the need for a limiting instruction.

We also recognize the possibility of preserving the record by objections to instructions as well as requested instructions in Miller v. Town of Ankeny, supra, when we respond to the claim there was error in not instructing the jury a second anwer should be considered in connection with only one count by saying:

"A sufficient answer is that defendant did not request such a limiting admonition or instruction nor object on this ground to the instructions given the jury." Page 1060 of 253 Iowa, 913 of 114 N.W.2d.

The important point is that the trial court's attention be

directed to the need of and the desire for a limiting instruction in such a manner and at such time that he will have the opportunity to properly instruct the jury. The exception to the instructions was sufficiently clear here, but there is other evidence in the record without objection which renders the error non-prejudicial.

Defendant testified: "I asked him in my letter dated November 27, 1961, Exhibit 11, to send me the names of all the people with whom he claimed he negotiated. We got an answer from his attorney. Exhibit 12 is the letter I got from his attorney."

The pertinent part of Exhibit 11 is: "I do want you to send me a list of the names and addresses of all persons with whom you negotiated for the sale of the motel during the period that the Listing Contract was in effect; just as I requested in the notice."

The body of the letter from plaintiff's attorney follows:

"Mr. Tom Vint of the Vint Realty Company has handed us a signed copy of his Listing Contract with you dated May 26, together with your notice of revocation of listing contract dated November 21, 1961, and together with your letter of November 27, 1961.

"The contract does not provide that Mr. Vint is to furnish you with a list of the names and addresses of the numerous parties with whom he has negotiated relative to this proposed sale. I do not feel that the statement contained in your notice of revocation that unless Mr. Vint furnished you with such a list, you would consider and determine that he did not negotiate with anyone whomsoever for the sale of the premises and would not have been put on notice of prospects to have much force and effect. If you sell the property on or before November 26, 1962, I would suggest that before making any commitment you contact Mr. Vint and ascertain whether your prospect is one that, he has interested in this property.

"Mr. Vint advises me that he has had correspondence with 35 or 40 people relative to this property, some of whom have inspected the premises, and in at least one case, the prospect did not advise you that he had been referred to this property by Mr.

Vint. In addition, Mr. Vint, or someone from his office, have personally shown people through this property on several occasions. Mr. Vint advises me that there have been several other parties with whom he has not had correspondence, but with whom he has negotiated relative to the sale of this property."

It therefore appears that the evidence which plaintiff sought to limit in Exhibit 10 is in evidence without objection and failure to give the limiting instruction could not have been prejudicial.

For the reasons herein stated, the case is affirmed.—Affirmed.

All JUSTICES concur except JUSTICE MASON who takes no part.