Theodore D. MAIER, father and next friend of Richard Michael Maier, a minor, 18 years of age, Appellee,

v.

ILLINOIS CENTRAL RAILROAD COMPANY, a corporation, Appellant.

No. 2–56392.

Supreme Court of Iowa.

Oct. 15, 1975.

Jerry C. Estes, of Kersten, Opheim, Carlson & Estes, Fort Dodge, for appellant.

John M. Perkins, of Mitchell, Mitchell, Murray & Blackburn, Fort Dodge, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

Defendant appeals a judgment for plaintiff for damages arising from a car-train accident. We affirm.

■ Considerable factual detail is hotly disputed. The parties expend considerable ink and effort outlining the conflicting testimony of various witnesses. Except for a special purpose (as, for example, in arguing the sufficiency of evidence) it is generally idle on appeal to indulge in such disputes. Generally, except where our review is de novo, arguments over conflicting testimony come too late on appeal. These factual arguments should have been addressed to the finder of facts. Rule 344(f)(1) and rule 344(f)(2), Rules of Civil Procedure. Taking, as we must, the evidence in the light most consistent with the jury verdict the following facts appear:

The accident occurred in the town of Barnum, Iowa, about 4:00 p. m. January 25, 1972. Richard Maier (plaintiff), then age 18, was driving a small two door automobile into which were crowded six young passenger companions. Proceeding south on a town street the car approached a crossing of the Illinois Central Railroad Company (defendant). Plaintiff and his passengers were all very familiar with the crossing and did not expect a train at such an hour.

There were two sets of tracks at the crossing, the siding, first to be crossed by a southbound vehicle, and the main line. There were no automatic warning devices at the crossing. There was only an ordi-

nary "crossbuck" warning sign, in front of which was placed a stop sign. This stop sign was located 30 feet north of the center of the main tracks and 12 feet north of the nearest rail of the siding tracks.

Streets were icy and slippery. Plaintiff was driving at a slow rate of speed and stopped his car a few feet north of the stop sign. At this point a view to the west was considerably obstructed by a grain elevator. The southeast corner of the elevator is 27 feet north of the center of the main tracks and 40 feet from the stop sign. Since the town street and the tracks in question were nearly at right angles it is apparent the view to the west of an automobile driver proceeding south is wholly obstructed until the driver is at least past the stop sign.

After stopping at the stop sign plaintiff then proceeded slowly southward. He looked first to the left and turned toward the right. As he was looking toward the right a passenger in the car spotted defendant's approaching train and shouted a warning. There was evidence from which the jury could, and apparently did, find the train was approaching from the west at an excessively high rate of speed. Similarly the jury could find the train bell was not operating and the whistle was not sounded until it was too late to avoid the accident. Plaintiff was unable to stop his car which collided with defendant's train. The amount of damages is not disputed on appeal.

I. The Iowa statutory requirements for railroad crossing warning signs and signals are quite typical. Section 478.1, The Code, among other things, requires a railroad to erect at each crossing " * * * a sign with large and distinct letters placed thereon, to give notice of the proximity of the railway, and warn persons of the necessity of looking out for trains. * * *." Another statute requires ringing of bells and blowing of whistles. Section 478.19, The Code.

Case law on a railroad's duty to give warnings in addition to minimum statutory requirements has become well settled. It was summarized in *Wickman v. Illinois Central R. Co.,* 253 Iowa 912, 917, 114 N.W.2d 627, 629–630 (1962) as follows:

" * * * [A] railroad company is not required to install a signaling device or station a flagman at every railway crossing. (Authority). * * * [S]tatutory requirements for warnings at railway crossings, as the cross bucks, ringing the bell and blowing the whistle, are minimum only; * * * conditions may exist which require more. (Authorities).

"A third principle, elementary of course, is that in this class of cases our duty is not to decide whether the crossing in question was in fact extraordinarily hazardous so that some warning beyond the statutory requirements was called for, but only to say whether there was substantial evidence from which a jury might so find. (Authorities).

"The general rule also is that whether the condition of a crossing, with its surroundings, is such as to call for additional warning devices, or flagmen, is a question for the jury unless reasonable minds could reach only one conclusion from the evidence. (Authorities)."

We must now assume the crossing in question was more than ordinarily dangerous. The jury verdict prevents defendant from disputing that issue further. Defendant's first assignment is its claim the stop sign was adequate additional warning. Defendant contends the stop sign obviated any duty to place any further signaling devices. The trial court refused to so hold as a matter of law and submitted the question to the jury. Under the trial court's instructions it was for the jury to determine whether " * * * in the exercise of ordinary care for the protection and safety of travelers upon the roadway in question, an automatic warning device or signal ought to have been provided, * * *."

In contending the question should be answered as a matter of law defendant argues

against the weight of authority. Whether precautions taken at an extraordinarily hazardous crossing were adequate is ordinarily a question for the jury. 65 Am.Jur.2d, Railroads, § 495, page 648. We hold the trial court was right in submitting the question to the jury in the instant case.

The jury might have found the stop sign adequate but was not bound to do so. " * * * The purpose of the stop is to enable the driver who stops the better to make efficient observations * * * as due care may require. * * *." *Hittle v. Jones,* 217 Iowa 598, 604, 250 N.W. 689, 692 (1933) (stop sign at highway intersection). Common law requirements of "additional warnings" at dangerous intersections are generally thought of in terms of "gates, flashing lights, bell, gong or other device." *Strom v. Des Moines & Central Iowa Ry. Co.,* 248 Iowa 1052, 1069, 82 N.W.2d 781, 791 (1957). The question is one of due care, which requires the railroad to adopt " * * * a reasonably safe and effective mode, commensurate with the danger at the particular crossing, of warning travelers of the approach of trains, * * *." 74 C.J.S. Railroads § 725, page 1336.

The stop sign in question was erected under the terms of § 321.342, The Code, which authorizes placement of stop signs at crossings designated as particularly dangerous. A motorist is required to stop in obedience to such a sign " * * * within fifty feet but not less than ten feet from the nearest track * * *." A motorist could fully comply with this statutory requirement and while stopped be unable to see trains approaching from the west. His vision could remain wholly blocked until after he proceeded from the stop sign. Defendant's first assignment is without merit.

II. Defendant's second challenge complains of the refusal of the trial court to direct a verdict in its favor. It is defendant's claim plaintiff was contributorily negligent as a matter of law. The argument proceeds from the fact the crossing was extraordinarily hazardous, a fact defendant

denied at trial. It is argued plaintiff stopped his car where his view was obstructed. Defendant asserts plaintiff then proceeded onto the tracks without looking for trains from a point where his view became clear and at which he could stop in time to avoid the collision.

Defendant relies on *Kinney v. Larsen,* 239 Iowa 494, 31 N.W.2d 635 (1948). *Kinney* is inapplicable. That opinion carefully distinguished earlier cases where, as here, " * * there was substantial evidence that the view of the track was obstructed 'so as to render it impossible or difficult to learn of the approach of a train' * * *. In general we have held that where the view of the crossing is so obstructed * * * the question of contributory negligence is for the jury. * * *." 239 Iowa at 500, 31 N.W.2d at 638.

We have said that in approaching a railroad crossing a motorist's "duty to look is a continuing duty." *Nederhiser v. Chicago, R. I. & P. R. Co.,* 202 Iowa 285, 290, 208 N.W. 856, 858 (1926). See also *Scherer v. Scandrett,* 235 Iowa 229, 237, 16 N.W.2d 329, 333 (1944) and citations; 65 Am.Jur.2d, Railroads, § 552, page 697.

Although lookout at a crossing is a continuing duty this defendant's reliance on the principle is misplaced. Again we take the evidence in the light most consistent with the verdict. Plaintiff came to a full stop after which he proceeded slowly onto the track on icy streets. The jury could find that, after looking to his left, plaintiff started to look to his right and was unable to complete his observation only because of the excessive speed of the train. The jury could have been impressed by the evidence no bell was sounded and the whistle sounded too late to warn plaintiff.

The standard of care expected of a motorist approaching a railroad crossing with an obstructed view was explained in *Coonley v. Lowden,* 234 Iowa 731, 12 N.W.2d 870 (1944):

"A traveler approaching a railroad must look when by looking he can see. A traveler is required to look for approaching trains within a reasonable distance from the crossing, but not at any particular place nor at all points. It is ordinarily for the jury to determine whether he selected a proper place for making observation and otherwise used ordinary care for his safety. When the jury could find that a traveler looked within a reasonable distance from the crossing, a court will not ordinarily say, as a matter of law, he was guilty of contributory negligence because he did not look again from some other designated point from which he might possibly or probably have discovered the train. * * *. The law does not require perfect care, but only ordinary care under the attendant circumstances. * * *." 234 Iowa at 736–737, 12 N.W.2d at 874–875. See also *Rosin v. Northwestern States P. Cem. Co.,* 252 Iowa 564, 107 N.W.2d 559 (1961); *Chicago, Burlington and Quincy Railroad Company v. King,* 337 F.2d 510, 514–515 (8 Cir. 1964).

Only in the rare and exceptional case does a party having the burden of proving an issue, such as contributory negligence, show it as a matter of law. Rule 344(f)(10), R.C.P.; *Wittrup v. Chicago & Northwestern Ry. Co.,* 226 N.W.2d 822, 827 (Iowa 1975) and citations.

The trial court was right in denying defendant's claim plaintiff was contributorily negligent as a matter of law. It was a matter for jury determination.

III. In another assignment defendant complains of the court's instruction regarding plaintiff's continuing duty to exercise due care. A review of the objection made at trial discloses counsel did not then alert the trial court to the complaint he seeks to raise on appeal. The objection made was not addressed to the form of the instruction. Rather defendant then complained of the fact the instruction did not extend the duty therein explained to other plaintiffs whose claims are no longer in dispute.

" * * * [A]n objecting party must point out wherein he contends an instruction is erroneous with such specificity that a trial court be alerted thereto and have opportunity to effect a correction before submission of same to the jury. * * *." *Madison Silos, Div. of Martin Marietta Corp. v. Wassom,* 215 N.W.2d 494, 501 (Iowa 1974). See also *Vint v. Ashland,* 258 Iowa 591, 600, 139 N.W.2d 457, 463 (1966). No error was preserved for this assignment.

IV. Defendant separately argues the trial court erred in not sufficiently instructing on the relative rights of a motorist and a train at a railroad crossing where a stop sign is positioned. The court instructed on the relative rights and obligations of a railroad company and traveler, explaining the rights are reciprocal and that the railroad company has the right-of-way. Defendant's complaint is that the instruction omitted mentioning the effect upon such duties of the placement of a stop sign at the crossing.

The effect of the placement of the stop sign was explained in another instruction. It was not error for the trial court to refuse to tailor each instruction so as to include all theories of negligence. The jury was directed in another instruction to read and consider all instructions together. See *Dickman v. Truck Transport, Inc.,* 224 N.W.2d 459, 464 (Iowa 1974) and citations. " * * * Although it is error for a trial court not to submit pleaded specifications of negligence which have support in the evidence, this principle does not require the same issue to be submitted in two forms. * * *." *Porter v. Iowa Power and Light Company,* 217 N.W.2d 221, 233 (Iowa 1974). There was no error.

V. Defendant also assigns as error the admission into evidence of posed photographs. During trial plaintiff, with three of the passengers who had been in the car at the time of the accident, went to the crossing with their attorneys and a photographer. An automobile of the same model

as that involved in the accident (though manufactured one year later) was parked two to four feet north of the stop sign. Plaintiff and his three passengers were told to get into the car in the same positions they had occupied the day of the accident. The photographer placed the camera in front of the driver's face and took two pictures depicting the driver's view of the crossing in the direction from which the train had come.

Such pictures could arguably bear both upon plaintiff's view down the railroad track and on the question of whether his view was affected by having three passengers with him in the front seat of his car. Crowded conditions in the car were an issue at trial.

■ Defendant's first objection to the photographs was a broad challenge of their proper foundation. Iowa law holds photographs of objects or persons are admissible if they are illustrative of the testimony of witnesses. *State v. McClelland*, 162 N.W.2d 457 (Iowa 1968); *State v. Dillon*, 161 N.W.2d 738 (Iowa 1968); *Stiefel v. Wandro*, 246 Iowa 807, 68 N.W.2d 53 (1955). See also *Galbraith v. George*, 217 N.W.2d 598, 602 (Iowa 1974).

■ Plaintiff testified the exhibits reasonably and accurately portrayed the view of the scene as he looked out of his car. Earlier testimony established he was familiar with the crossing. It is not necessary for a witness to be a photographer or know anything concerning the taking of pictures or technical data concerning cameras or lenses. The only requirement is that he know about the facts represented or the scene or objects photographed. After this is established a witness may say whether the photograph correctly and accurately portrays such facts. When the photograph is thus verified it is admissible. McCormick on Evidence, Second Ed., § 214, page 530.

■ Defendant seeks to attack the integrity of the photographs in various ways. Cross-examination revealed plaintiff did not recall the exact positioning of his seat and those occupied by his passengers the day of the accident. Another witness testified they were the same. Similarity may be shown by any witness whose familiarity with the subject of the photograph qualifies him. 3 Jones on Evidence, Sixth Ed., § 17:51, page 353.

■ Defendant also points to the fact the automobile used in the photograph was manufactured one year later and that clothing of the parties may have been different. Such carping distinctions relate not to admissibility of the exhibits.

"The fact that there are differences or changes in conditions, including even substantial changes, will not necessarily exclude a photograph where the changes or differences can be and are explained, so that the photograph, as explained, will give a correct understanding of the condition existing at the time to which the controversy relates, and be practically instructive." *Galbraith v. George*, supra, 217 N.W.2d at 602 (quoting 32 C.J.S. Evidence § 715, page 1012).

"The general rule in regard to photographs is that their admission or exclusion rests largely in the discretion of the trial court since it has the opportunity to examine the photographs and hear the evidence given by the witness who identifies them and describes what they show or do not show. * * *." *Twyford v. Weber*, 220 N.W.2d 919, 924 (Iowa 1974) and citations.

In the exercise of its discretion the trial court authorized defendant to procure and offer other photographs as suggested at III Wigmore, Evidence, (Chadbourn Rev.), § 798, page 257. The offer was accepted by defendant who procured and offered pictures it took at the scene later during the trial.

There was no error in admitting the posed photographs.

■ VI. In another assignment defendant complains it should have been granted a new trial because of a newspaper

story published before return of the verdict. The story accurately named the person serving as foreman of the jury. Under rule 199, R.C.P., a juror cannot discuss any matters relating to the trial during trial or deliberations.

No showing was made as to how the newspaper in question was able to speculate who was serving as jury foreman. More importantly, there was no showing any juror communicated this information to the press, or that any juror knew of the story during deliberations. In any event the trial court was right in refusing to grant a new trial on this ground. " * * * Even when jury misconduct is shown it is not enough. There must appear also the reasonable probability such misconduct influenced the verdict. * * * " *Turner v. Jones,* 215 N.W.2d 289, 290 (Iowa 1974) and authorities.

VII. We finally consider defendant's most serious assignment. The case was submitted to the jury on Wednesday, March 21, 1973 at approximately 5:30 p. m. A record was made of a discussion between the trial court and jury foreman on March 22, 1973. No one else was present. The discussion had to do with whether it appeared the jury would be able to reach a verdict. The trial court took great pains to explain his neutrality as to jury deliberations. The judge explained he was not to be advised as to the jury deliberations other than to be told whether agreement was likely or even possible.

There was nothing objectionable in the content of the communications between the trial court and the jury foreman. But there was decidedly something objectionable in the fact they took place. Few occurrences during trial or deliberations are quite so likely to cause reversal as a private communication between anyone, including a judge, and a juror. *State v. Register,* 253 Iowa 495, 504–505, 112 N.W.2d 648, 653 (1962); *Daniels v. Bloomquist,* 258 Iowa 301, 306–307, 138 N.W.2d 868, 872 (1965); *State v. Grady,* 183 N.W.2d 707 (Iowa 1971);

*State v. Snyder,* 223 N.W.2d 217, 221–222 (Iowa 1974); 75 Am.Jur.2d, Trial, § 1001, pages 842–844; 89 C.J.S. Trial § 473, pages 115–117.

It is no answer to show a record which discloses the judge's remarks to the foreman were careful and innocent in their content. The difficulty is we have no record, nor any way to learn, how the foreman related the judge's communication to the other jurors.

Notwithstanding the foregoing, defendant still has the burden to preserve the error by raising the matter in district court or to excuse itself for failing to do so. We do not consider matters raised for the first time on appeal. *Quad County Grain, Inc. v. Poe,* 202 N.W.2d 118, 119 (Iowa 1972) and citations; *Ganrud v. Smith,* 206 N.W.2d 311, 316 (Iowa 1973); 4 C.J.S. Appeal and Error § 228, pages 665–674.

Defendant has wholly failed to make any record justifying or explaining its failure to complain, either at the time of the communication between judge and jury foreman or in its motion for new trial. The scant fragment of a record before us comes by virtue of a docket entry entered several months after this appeal was undertaken. In it the trial court directed the filing of affidavits as a part of the record on appeal. These affidavits apparently had been attached to defendant's motion for new trial.

An affidavit by plaintiff's counsel recited that trial counsel for all parties were advised of the meeting between the judge and foreman before it took place. According to this affidavit all counsel were invited to attend. An affidavit by defendant's counsel did not in any way dispute being advised of the meeting, did not indicate any objection was interposed thereto, but went only so far as to deny being specifically invited to attend. There is no claim defendant's counsel was unaware of the communication between judge and juror.

Defendant was required to complain of the communication in its motion for new

trial or explain its failure to do so. The communication was not mentioned in the motion. Defendant has never claimed the communication was without notice to all trial counsel. No other excuse is suggested for failing to preserve the error. It is waived.

Affirmed.