W. S. HARRINGTON, doing business as SAFEWAY TRUCK LINES, Appellant, v. NELLIE E. FORTMAN et al., Appellees.

No. 46033.

April 6, 1943.

Jordan & Jordan, of Cedar Rapids, for appellant.

Perrine & Albright, of Cedar Rapids, for appellees.

BLISS, J.—The damaged truck was owned by Mueller and was being driven at the time by his driver, Frakes, but the entire outfit was under lease to the plaintiff and was being so operated. The vehicle consisted of a tractor-trailer combination, thirty-five feet in length, and weighing eight tons when empty. At the time it was loaded with nine tons of butter. The accident, as we will call it for convenience, occurred at shortly past 8 o'clock in the evening of August 4, 1939. It is spoken of in the record as between daylight and darkness. All vehicles involved had their lights on. The accident occurred about four miles east

of Grinnell on highway No. 6 at its intersection with highway No. 63. Both are paved. The first extends east and west across the state and the second extends north and south. The entrance upon No. 63, to the north and left as one travels east, is by a rather wide curve. The truck was traveling east and was going to continue east on No. 6. The defendants' car, owned by Mr. Fortman, a Lincoln Zephyr, and driven by his wife, was also traveling east and had been following the truck until a short time before the intersection was reached. The Fortmans intended to turn north on No. 63.

While the testimony is somewhat contradictory on some matters, it fairly appears that from the intersection where No. 63 curves north and diverges from No. 6, it is twelve hundred feet west on No. 6 to a place where the pavement has a slightly downgrade to the intersection. When defendants were about two hundred feet farther west of this higher point, and were approaching the truck from the rear, the driver of the truck motioned for them to pass him. He testified that he did so, and that the truck was traveling about forty miles an hour, and that the defendants' car passed him at a speed of between forty-five or fifty miles an hour. Mr. Fortman at one time testified that the speed of his car might have been sixty miles an hour. After passing the truck defendants' car drove back to the right side of the road and there traveled east for a short distance and passed a "Slow" sign on the south side of the highway. This sign was six hundred and thirty feet west of the intersection. Of this passing, Frakes, the driver of the truck, testified:

"I was at that time in motion myself, traveling about 40 miles an hour. She came up from behind me and went around me when she seen this large Slow sign that loomed up. She cut in front of me when she was not more than about five feet past. Then I tapped my air brakes enough to slow me down. After she cut in in front of me she proceeded east but gave no signal of intention to stop until she stopped dead when I was not more than ten feet behind her. At that time there was oncoming traffic in the person of Gale Ewing and his brother coming around the curve, I could see the headlights. * * * So when she stopped ten feet in front of me I saw this oncoming truck.

[It was coming west on No. 6.] Had I proceeded straight ahead I would have struck her and to avoid striking her I swung to the right trying to go around her on the berm. * * * My car turned over on its right side but I did not strike this lady. * * * The oncoming truck I have described came to a stop clear by the intersection seventy-five feet past the intersection of 63 on the opposite side of the road, passing the point of my accident. He had swerved clear over on his right shoulder.''

Frakes also testified that the defendants' car ran two car lengths past the intersection and came to a stop diagonally across the center line. The shoulder of No. 6 onto which the truck turned was soft from recent rains and the truck turned on its side about even with the standing car of the defendants. Frakes was familiar with the road and so was Mr. Fortman. Frakes also testified:

''I didn't have time to sound a horn. The Fortman car had come to a stop so quick I could not do anything. * * * I was so close behind her I did not have time to sound the horn.''

Mrs. Fortman's version of what took place is thus told by her:

''I passed this truck and when I was back on my own side of the pavement, we went some distance and I came to the Slow sign, I slowed my car by lifting my foot from the accelerator and stepping—giving signals with my foot on the pedal, the brake pedal, jiggling it up and down to give him warning *that I was going to do something,* and at the same time extending my left hand and arm for a lefthand turn, and as I went on down near the intersection I saw traffic approaching from the east going west too close, I thought, to the intersection where I was supposed to turn north on 63, that I did not think I could make it safely, I slowed my car down gradually until I saw I could not make it and lowered my hand and arm for a stop and gradually stopped my car, and in a second or two after I stopped, at least one car had passed, I heard a rushing sound to the right, naturally I glanced that way and it was this truck right almost by the side of the car passing right by it, and it went into the ditch. * * * I passed the truck * * * around two hundred feet

from where the down grade started to the intersection. I was traveling around 50 miles an hour. * * * I did not actually apply my brakes before the Slow sign. I just jogged them to work the stop lights which brighten when you step on the pedal. They were working. They worked after the accident. The hand signal I gave by extending my hand and arm out horizontally to the left through the left window starting at the Slow sign west of the intersection. As I neared the intersection and saw it was not going to be safe to cross until the oncoming traffic had passed, then before I stopped my car, of course, I lowered my arm to the side of my car and gradually came to a stop. I had my hand and arm out from the Slow sign down to the stop. I came to a stop where you normally turn into 63 in the intersection. The pavement is a gradual down grade from the Slow sign clear to the intersection. I applied my brakes to stop it. At the time I stopped I was on the right hand side of No. 6 and headed east." (Italics supplied.)

On cross-examination she testified:

"The tail lights on my car are quite large, about the size of a baseball, of solid red glass. They get brighter and duller *with no markings on them. Q. Any sign says stop on it? A. I don't know.* * * * I had held out my left hand because I was going to make a left turn into the intersection. I started giving my left hand signal of my intention to turn on 63 at the Slow sign which was six hundred and thirty feet back, and I kept my hand out until I lowered it for a *stop or for six hundred and thirty feet. I was in the intersection when I decided to stop.* I didn't stop before because I had no occasion to stop, *but I gave the signal to stop as I was driving* into the intersection immediately on seeing that traffic was too close to make it. I was signalling for a stop just as I was entering the intersection. I had so conducted myself that people behind would think I was going to turn left and then I changed and showed them I was going to stop. When I stopped I was on 6. I was still on 6 ready to enter 63. * * * Right where a car would stop if it was making the turn on left, where they would start to turn into 63. No part of my car had gotten into 63. * * * I was just ready to

turn across the pavement on to 63. I would not have to make any moves to go across." (Italics supplied.)

Plaintiff alleged in his petition that the negligence of the driver of defendants' car was as follows:

"1. *In failing to give a hand or arm signal by extending hand and arm downward before making the stop.*

"2. *In driving past the intersection and* then suddenly stopping without due regard to the condition of the traffic and the surface of the highway.

"3. In stopping said motor vehicle suddenly in the path of the plaintiff's truck at a place where she could not make said stop without endangering the life and property of other people and other vehicles on the highway and especially the motor vehicle of this plaintiff.

"4. In stopping the said automobile at an angle in the path of the plaintiff's vehicle." (Italics supplied.)

Defendants denied generally the allegations of the petition as amended, and alleged that plaintiff's negligence in not having his truck under control, and not driving it at a proper and lawful speed under the existing road and traffic conditions and in approaching an intersection, and in failing to observe the assured-clear-distance statute, was the sole proximate cause or a contributing cause of the damage to plaintiff's truck.

At the close of plaintiff's evidence the defendants moved for a directed verdict. It was overruled. A similar motion was made by them at the close of all of the evidence. It was also overruled. Defendants then moved to withdraw each of the four specifications of negligence in the petition. The court said: "I think number 1 will be withdrawn." The defendants then said: "Then we will amend our motion to strike out the portion of specification of negligence number 2 'in driving past the intersection and then' * * *." The court replied that the ruling thereon would appear when the matter was submitted. In the statement of the petition and plaintiff's cause of action in the instructions, the court stated that a car driven "by the defendant, Nellie E. Fortman, pulled around plaintiff's vehicle and proceeded also in an easterly direction and suddenly stopped

98

in the path of plaintiff's vehicle. That such defendant gave no signal but stopped so suddenly that plaintiff's driver, Raleigh Frakes, was forced to leave the road in order to avoid hitting it and thus went into the ditch.'' But in stating the specific grounds of negligence alleged in the petition the court omitted ground 1 and six words in ground 2, being the italicized parts of the grounds which we have set out as appearing in plaintiff's petition.

I. Appellant's first assignment of error is based upon the court's refusal to give his requested Instruction No. 1. The matter referred to in the request was beyond the allegations of the petition, and we are of the opinion that there was no error in the court's refusal.

II. The second and third assignments of error are respectively based upon the refusal of the court to give appellant's requested instructions 2 and 3, to wit:

''2. You are instructed that no person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal, by extending the hand down, to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.

''3. You are instructed that the law does not recognize as a stop signal the electrical intensification of the red lights on the back end of an automobile where there is no lettering thereon with the designation 'stop.' ''

The instructions given by the court were quite general and none of them specifically instructed the jury upon the law with respect to the particular grounds of negligence alleged in the petition. The theory of appellant's case as pleaded and as indicated by the testimony introduced was that the damages suffered by appellant were caused by the negligence of the appellees in not giving a hand or arm signal before stopping, and in stopping suddenly, without due regard to traffic and highway conditions, after passing the intersection, at an angle, in the path of the truck, and at a place where a stop could not be made without endangering other people and other vehicles and the truck of the plaintiff.

The appellant excepted to the court's elimination of ground 1 of his specific allegations of negligence, and part of ground 2, as noted above. The court was in error in so doing. There was evidence to support both of the allegations stricken. They were proper allegations. The pertinent statutory sections which were in effect at the time of the accident are:

"5025.05  Signal continuous.  A signal of intention to turn right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

"5025.06  Stopping.  No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.

"5025.07  Signals by hand and arm or signal device.  The signals herein required may be given either by means of the hand and arm or other proper signal or signal device of a type approved by the department, provided, however, that no motor vehicle complying with the laws of the state shall be required to display an electrically operated directional signal lamp.

"5025.08  Method of giving hand and arm signals.  All signals herein required which may be given by hand and arm shall when so given be given from the left side of the vehicle and the following manner and interpretation thereof is suggested:

1. Left turn.—Hand and arm extended horizontally.

2. Right turn.—Hand and arm extended upward.

3. Stop or decrease of speed.—Hand and arm extended downward.

"5034.13  Signal lamps and signal devices.  Every motor vehicle shall be equipped with a signal lamp or signal device which is so constructed and located on the vehicle as to give a signal of intention to stop, which shall be red or yellow in color, which signal shall be plainly visible and understandable in normal sunlight and at night from a distance of one hundred feet to the rear but shall not project a glaring or dazzling light."

These sections clearly state that the vehicle shall not be stopped or its speed suddenly decreased without first giving an appropriate signal, in the manner provided, to the driver of any

vehicle immediately to the rear. These signals may be given by hand or arm or any other proper signal or signal device approved by the department. A proper signal for a stop or decrease of speed is the hand or arm extended downward.

The sudden stopping of appellees' car in the path of appellant's truck, without giving any signal, was an issue in the case, alleged in appellant's petition both as filed and in the modified form thereof as set out in the court's instructions. There was evidence to support these allegations. There were statutory provisions directly bearing upon them. The giving of a hand-and-arm stop signal was a proper one. Appellant introduced evidence that neither such a stop signal nor any other stop signal was given. Whether it was or was not given was a question for the jury, but the jury was entitled to be instructed as to the pertinent law thereon, and the parties were entitled to have the jury so instructed.

It is the law, many times announced by this court, that it is the duty of the trial court to instruct the jury on the material issues warranted by the pleadings and the evidence, and to do so on its own motion, even though not requested. As said by Justice Vermilion in Anderson v. United States Railway Admn., 197 Iowa 1, 6, 196 N. W. 584, 587:

"Plaintiff was entitled to go to the jury upon every causative fact alleged in his petition and denied by the answer which there was evidence tending to establish. Kinyon v. Chicago & N. W. R. Co., 118 Iowa 349; Reed v. Chicago, St. P., M. & O. R. Co., 74 Iowa 188. It was the duty of the court to so charge the jurors concerning the law of the case that they would have clear and intelligent comprehension of what they were to decide; and this is true even in the absence of request by counsel for instructions. Freeby v. Town of Sibley, 183 Iowa 827."

A few of the many cases so holding are, Muldowney v. Illinois Central R. R. Co., 32 Iowa 176, 180; Manuel v. Chicago, R. I. & P. R. Co., 56 Iowa 655, 657, 10 N. W. 237; McSpadden v. Axmear, 191 Iowa 547, 549, 181 N. W. 4; Baker v. Davis, 212 Iowa 1249, 1251, 235 N. W. 749; Overhouser v. American Cereal Co., 128 Iowa 580, 586, 105 N. W. 113; Kaufman v. Borg, 214 Iowa 293, 297, 242 N. W. 104.

Appellees urge that the requested instructions were too narrow, and insufficient, or improper for other reasons. Even if this should be true, under the rule just stated, it does not avail the appellees. They were sufficient to arrest the attention of the court and call for proper instructions. See Hanson v. Kline, 136 Iowa 101, 112, 113 N. W. 504; Kinyon v. Chicago & N. W. Ry. Co., 118 Iowa 349, 92 N. W. 40, 96 Am. St. Rep. 382. In Jakeway v. Allen, 226 Iowa 13, 22, 282 N. W. 374, 379, we said:

"The jury should not have been left to conjecture and speculation in formulating their own legal standard for measuring the duties owing to the defendant by plaintiff as to the grounds of negligence submitted to the jury for their consideration."

And in this case, also, the appellant was entitled to have the instruction of the court relative to duties of the appellees, and the rights of the appellant, with respect to the stopping of the appellees' car and the signals to be given under the circumstances.

The appellant duly excepted to the action of the court in refusing to set out the allegations of the appellant's petition respecting negligence, and in failing to give instructions thereon. The assignments of error based thereon are meritorious and are grounds for reversal. Whether the signals that may have been given were proper is not the determining question. The jury should have been instructed as to the law thereon.

III. Appellant excepted to Instruction No. 8 (referring to section 5023.1, Code, 1939) given by the court, to wit:

"The term 'assured clear distance ahead' referred to in these instructions, signifies and means that the operator of a motor vehicle shall at all times be able to stop his vehicle within the distance that discernible objects may be seen ahead of it, if necessary to avoid a collision or damage."

The grounds of exception were that the court omitted from the instruction the provision that the one charged with violating the section has a right to assume that all persons using the highway will observe the law. The appellees had alleged that the appellant had violated this section. Since the court assumed to

instruct on this issue, and to set out the statute, it should have included the qualifying clause omitted therefrom. This is particularly true because of the alleged conduct of the driver of the appellees' car, and the diverting effect thereof upon the appellant's driver. See comments of the court, speaking through Justice Garfield, in Central States Electric Co. v. McVey, 232 Iowa 469, 5 N. W. 2d 817. We feel constrained to hold the instruction erroneous and prejudicial.

IV. Appellees insist that even though the matters complained of by appellant are erroneous they are not reversible error because appellees were entitled to a directed verdict since the negligence of the appellant was either the sole proximate cause of the accident or contributed thereto, and further, that if no stop signal was given it would be immaterial because the giving of such a signal would not have benefited the appellant, and the failure to give it could not have been the proximate cause of the accident. It is their contention that the speed at which the appellant was traveling and his close proximity to appellees' car would have nullified the effect of any stop signal, since appellant could not have stopped in time. They rely upon testimony of Frakes that he followed the appellees' car at a speed of forty miles an hour until it stopped, and then the truck was but five or ten feet behind their car. He did so testify on cross-examination, but he also testified that he was traveling at the rate of ten miles an hour when he went into the ditch. He also testified that he slowed below forty miles after the appellees passed him. There is no testimony that he exceeded forty miles an hour, and the appellees testified that they traveled for a time at fifty or sixty miles an hour. Fortman also testified that their car had been stopped five or ten seconds before the truck went into the ditch. Under the record, the questions of the speed of the truck, the distance it was back of the car, and the effect of giving a stop signal, were all questions for the jury. The question of appellant's contributory negligence was properly submitted to the jury.

We are not to be understood as holding that appellant's requested instruction 3 was a proper instruction, or that it correctly stated the law with respect to giving a stop signal with

such a signal lamp or devices as are required by said sections 5034.13 or 5025.07. Neither do we hold that the statutes require that such signal lamp show the word "stop" thereon as noted in the requested instruction. Nor is it necessary that we construe said sections in the determination of this appeal. Our purpose in mentioning the requesting of the instruction is only to show the attempt of the appellant to call the attention of the court to his right to have the jury instructed on the law relative to what signals the operator of a motor vehicle must give before stopping his vehicle or suddenly decreasing its speed under the circumstances as shown by the evidence in this action.

We have considered other assignments of error but do not find it necessary to pass upon them.

It is our judgment that the judgment should be reversed. —Reversed and remanded.

GARFIELD, C. J., and HALE, OLIVER, WENNERSTRUM, and MULRONEY, JJ., concur.