Lola Faye Wilson, appellant, v. Antone Kouri and James Kouri, appellees.

No. 50968.

(Reported in 122 N.W.2d 300)

June 11, 1963.

Davis, Huebner, Johnson, Burt & Fulton, of Des Moines, for appellant.

Herrick, Langdon, Sandblom & Belin, of Des Moines, for appellees.

PETERSON, J.—This is an action for damages by reason of alleged injuries caused in a collision between two automobiles at the junction of Highways 6 and 64 east of Des Moines. The trial court submitted the case to the jury. Verdict was rendered for defendants. Plaintiff appeals.

The only errors assigned by appellant are allegations that Instructions Nos. 9, 16 and 17 were erroneous.

I. The accident happened on October 3, 1959, at the intersection of said two highways. Plaintiff was riding in a 1957 Dodge station wagon, driven by her husband, Alfred D. Wilson. The defendant, James Kouri, was driving a Chevrolet automobile owned by his father, Antone Kouri.

Mr. Wilson testified he and plaintiff had attended a football game at Iowa City; they stopped on their way home for dinner and proceeded toward Des Moines in a westerly direction on Highway 6. As they approached the intersection with Highway 64 there were two to four cars ahead of them in the line of traffic going up to the stop sign. Mr. Wilson said he had to slow down with the traffic and that he stopped because of the heavy traffic three times before reaching the stop sign. After the car ahead of him pulled away from the stop sign, he pulled up and stopped. There was a car coming on Highway 64 that was flashing its lights, and while stopped to let that car pass he was struck from the rear.

Mr. Kouri, the defendant, testified he left home in Des Moines about eight o'clock that evening to go to a grocery store at East Twenty-first and University Avenue. At Easton Boulevard and Avenue Frederick M. Hubbell he picked up a hitchhiker and took him to a drive-in, about one-half mile east of the intersection where the accident happened. He drove west on No. 6, and proceeded toward the intersection with No. 64. By this time it was dark. When he came up near the intersection he observed the station wagon, which he later learned was driven

by Mr. Wilson. It was stopped at the intersection. Defendant testified Mr. Wilson started to pull away from the stop sign and Mr. Kouri started to pull up to the stop sign. As he did so he turned his head quickly to make sure there was no traffic coming from the northeast. When he turned his head back Mr. Wilson had stopped again at a point partly past the stop sign. The Wilson car was about a half car length ahead of him. He immediately attempted to stop and did get slowed down to about one mile an hour, but even then he collided with the back of the station wagon.

Following the collision, Mr. Kouri told Mr. Wilson there was nothing wrong with his car. Mr. Wilson pointed out one small dent on the left rear of the station wagon, but said he did not think there was anything serious to worry about. They both proceeded on their way.

Mr. Kouri talked with Mr. Wilson over the telephone about a month after the accident and nothing was mentioned by Mr. Wilson about Mrs. Wilson being injured.

Mrs. Wilson testified she felt nauseated during the evening of the accident. When the accident happened she was leaning her head back on the upright part of the seat of the car. The only thing she noticed was that a "bun" fastened on top of her head together with a very small hat on top of it were knocked off and fell behind the seat. Mr. Wilson testified his wife did not tell him anything about her nauseated condition until two or three days after the accident. She did not see a doctor until one month after the accident at which time she went to see Dr. John Kelley. She saw him only once and he was not called as a witness. Her attending physician was Dr. Joseph G. Schupp. She saw him fifty-two days after the accident. She also consulted Dr. Walter D. Abbott of Des Moines. Defendants had Mrs. Wilson examined by Dr. T. B. Summers of Des Moines shortly prior to the trial. The principal contention of plaintiff at the trial was that she secured a permanent injury from the collision.

II. Plaintiff's first contention is that the trial court committed reversible error in submitting Instruction No. 16 to the jury.

Appellee's contention in connection with the instruction is

that plaintiff failed to take exception to the instruction, on the same basis as the contentions now made before this court, and that, therefore, this assignment of error does not merit our consideration.

In order to arrive at a conclusion as to these respective contentions we will quote the three matters involved. First: What was the instruction? Second: What was the exception taken to the instruction before it was submitted to the jury? Third: What are appellant's contentions in this court now?

Instruction No. 16 was as follows: "Defendants contend that the sole proximate cause of the accident involved herein was the negligence of the driver of the car in which the plaintiff was riding. If you find from the evidence that Alfred Wilson, driver of the car in which the plaintiff was riding, was negligent and that his negligence was the sole proximate cause of the accident and any injuries, if any, of the plaintiff, then the plaintiff cannot recover and your verdict should be in favor of the defendants."

The exception of plaintiff to the instruction when it was presented by the court to the attorneys prior to being submitted to the jury was: "The plaintiff excepts to the giving of Instruction No. 16 in its entirety for the reason that there is no competent evidence in this case from which the jury could find that the sole proximate cause of the accident involved herein was the negligence of the driver of the car in which the plaintiff was riding; there is no competent evidence from which the jury could find that Alfred Wilson was negligent in any particular. The evidence affirmatively shows that he was free from negligence and there is no competent evidence from which the jury could find that any conduct on his part was the sole proximate cause of the accident, * * *."

Appellant now urges: "Having undertaken to instruct as to an affirmative defense, it was incumbent upon the trial court to correctly instruct the jury that the burden of establishing the affirmative defense rested upon the defendants, and the trial court's failure, to properly instruct on the burden of proving the affirmative defense rested on defendants, was error."

The criterion is whether the exception taken alerted the trial

court to the error which the appellant is now urging. Appellant has gone one step beyond the exception taken to the instruction prior to its submission to the jury. The important part of the contention now urged by appellant was not mentioned in the exception. The exception was of no assistance to the trial court as to the matter now argued.

Rule 196, Rules of Civil Procedure, provides in part as follows: "* * * Within such time, all objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal."

The rule has been judicially approved in many decisions of this court. We will cite a few. Mongar v. Barnard, 248 Iowa 899, 911, 82 N.W.2d 765 (1957); Cunningham v. Court, 248 Iowa 654, 665, 82 N.W.2d 292 (1957); Soreide v. Vilas & Co., 247 Iowa 1139, 1151, 78 N.W.2d 41 (1956); Stewart v. Hilton, 247 Iowa 988, 994, 77 N.W.2d 637 (1956).

Complete administration of justice in the district courts, and freedom from error as far as possible in the instructions, are matters of great importance. After the instructions have been prepared by the trial court it is essential that the court receive careful examination of the instructions. When exceptions are made to the instructions it gives the trial court an opportunity to give further attention to their substance. If the court feels there is merit in the exceptions the court has the opportunity to correct such errors before the instructions are submitted to the jury. As a practical situation this occurs in many cases and prevents many errors from creeping into the trial of cases in the district court, and prevents many unnecessary appeals to this court.

The provisions of rule 196 are effective as to this assignment of error.

 III. Appellant assigns error by reason of the provisions of the last paragraph of Instruction No. 9, which is as follows: "In this case if either of the parties failed to keep a proper lookout such failure would constitute negligence on his part."

It was to this paragraph in Instruction No. 9 that appellant excepted, prior to submission of the instructions to the jury. Her exception was as follows: "For the reason that there is no competent evidence in the record in this case from which the jury could find that the plaintiff herein failed to keep a proper lookout * * *."

The basis of appellant's argument before this court is that the instruction was erroneous because it "imposed the same duty upon the plaintiff, a passenger in the automobile, as to lookout, * * * as was imposed upon the driver of the vehicle which struck the automobile in which she was riding."

There is no contention now that there is no evidence from which the jury could find plaintiff failed to keep a proper lookout; simply that the instruction erroneously imposed the same duty on plaintiff, a passenger, as was imposed on defendant, driver of second car.

Here again, there was nothing in the exception which alerted the trial court as to a comparison between plaintiff and Kouri as to duties of lookout. Two different and distinct legal propositions are involved in the exception and the present argument.

Again we invoke the provisions of rule 196, quoted in the previous division. We hold it is not necessary that this court consider this assignment of error.

IV. We find both parties argued the merits or demerits of the instruction at considerable length.

With reference to the obligation of passengers as to lookout, and as to being alert and free from contributory negligence when riding in a car, we have rendered two decisions recently which considered the proposition. Paulsen v. Haker, 250 Iowa 532, 543, 544, 95 N.W.2d 47; Peterson, admr., v. Davis, 254 Iowa 1359, 121 N.W.2d 111.

It is advisable to quote briefly from plaintiff's testimony, in considering the merits of the last paragraph of Instruction No. 9. This evidence refers to her actions immediately before and at the time of the collision.

"Q. You weren't looking outside of the car? A. No, I wasn't.

"Q. You weren't looking back? A. No.

"Q. You weren't looking to either side? A. Well, there

could have been an occasion I opened my eyes and saw something in front of me.

"Q. At the time this happened, were you looking at the side? A. No, I can't say then, no.

"Q. Just before this happened and at the time you weren't doing anything? A. Just lying there.

"Q. Other than lying there? A. Yes."

In Paulsen v. Haker, supra, we said: "Another question of fact arises upon the matter of lookout. * * * We are forced to conclude that there is no evidence from which the jury could properly find that plaintiffs carried the burden of showing the freedom of their decedent [the passenger] from contributory negligence. This was a burden incumbent upon them; it is too well established in Iowa that the plaintiff in an action such as this must plead and prove freedom from negligence contributing in any way to the injuries of which he complains to require elaboration. It will not do to say that since the decedent was riding in the rear seat and had no control of the driving she was necessarily free from any negligence. The question is substantial and we cannot ignore it."

If the provisions of rule 196, R. C. P., were waived we would not reverse on the basis of the last paragraph of Instruction No. 9.

V. Appellant vigorously urges the second paragraph of Instruction No. 17 was in error and that there is no evidence in the record to sustain the court in submitting said paragraph; it is as follows:

"In this connection you are instructed that if you find from the evidence in this case that the alleged injuries and damages complained of by the plaintiff would have occurred regardless of any negligence, if any, on the part of the defendants, then it cannot be said that any negligence, if any, on the part of the defendants was the direct and proximate cause of the alleged injuries and damages complained of by the plaintiff."

When the evidence is in conflict the decision is for the jury. When the court instructs the jury upon a certain question in a case there must be some evidence upon which to base such

instruction. In other words, as to the second paragraph of Instruction No. 17, quoted above, there must be some evidence supporting the theory that the injuries and damages complained of by plaintiff would have occurred regardless of any negligence upon the part of defendants. The court did not and could not pass upon the merits of any such negligence or absence of negligence, but if there was any such evidence the court had a right to submit the question to the jury. In order to determine whether there was sufficient evidence so to justify the trial court in submitting the instruction, it is necessary that we consider certain parts of the evidence.

As a foundation for later evidence we quote from plaintiff's testimony as summarized by her counsel in the record in the following words: "* * * that as they were approaching Des Moines she laid her head down to rest; that she had been resting for some time; that she was about half asleep and half awake, not talking, and relaxed; * * * The first indication she had that they had been involved in an accident was when she heard a noise and her husband opened the door and her 'bun' was lying in the back, and at that time she did not feel that she had received any injury of any consequence."

Three doctors testified on the trial of the case. Dr. Joseph G. Schupp and Dr. Walter D. Abbott were called by plaintiff.

There was some conflict in the doctors' evidence on this point. Plaintiff's doctors did testify they felt the jerk of her neck in the collision had something to do with her later suffering. However, Doctor Schupp did not give such fact primary consideration. In a letter or report made by him to one of plaintiff's attorneys, which report is in evidence, he stated:

"She gave a long-standing history of marked nervousness and had been treated for this in the past with numerous types of sedatives by numerous physicians. Accompanying these nervous spells she had had headaches which were similar to the ones which she was now experiencing. Her habits revealed that she was a heavy smoker and she previously had had surgery for an acute appendicitis and acute cholecystitis. * * * It was our impression that the patient was suffering from marked nervousness. * * * The laboratory data, including blood count and

urinalysis, was again normal. She was treated with Robaxin and Darvon. * * * X rays of the cervical spine revealed no evidence of injury or other abnormality. X ray of the skull appeared normal and there was no evidence of injury or other abnormality. * * * The X rays of the neck and of the spine were normal and showed no abnormality. There was no dislocation, no break or anything of that sort. * * * In my report I stated that she did have a minor injury to the neck in the accident but this was of secondary importance. That was my opinion at that time. It was my opinion at that time, and it is my opinion still, that her principal symptoms were the result of this nervous condition which she described to me in her history. * * *

"Q. In other words, it is your final conclusion that the principal difficulties that the plaintiff had during the time that you observed her were due to this nervous condition rather than to any injury, if any, sustained in this accident? A. That is correct, sir."

This was the testimony of plaintiff's regular physician. Dr. T. B. Summers was called as a witness by defendants. He is a specialist in neurology. He testified he had recently made a physical examination of Mrs. Wilson. He testified:

"Q. Doctor, based on your examination as you have related it here in your testimony, will you state whether or not in your opinion the symptoms that she related to you, including nausea and vomiting and the numbness, the affecting of speech, trouble with her eyes, the blunting of sensation, those symptoms and the nausea that she related, will you state whether or not in your opinion those symptoms were the result of any injury sustained in the accident she described? A. I do not feel that they are the result of any injury sustained in the accident. * * *

"Q. Will you explain these symptoms? Assume for a moment that Mrs. Wilson had in fact had a cervical strain, would the symptoms such as she related to you, as for example the numbness on the back of her left leg, the numbness on the top of her head, take those two incidents, would those in your opinion be consistent with a cervical sprain or the result of a cervical sprain? A. No, they wouldn't. * * *

"Q. And assume for the moment that a person had sustained an injury to a nerve end area of the spine which did produce numbness, would the area of that numbness change first from the left side to the right side, from the leg to the head, or various parts of the body? A. No.

"Q. Why is that true? A. Because if a nerve or a group of nerves were damaged sufficiently to impair their function and to cause a loss or an impairment of feeling in a part of the body, then invariably the pattern of loss follows a very definite pattern which conforms to the distribution of the nerve, and consequently it isn't going to change so rapidly and dramatically or switch from one side to the other. Furthermore, it is inconceivable that an individual would have some injury without a motor loss or paralysis. It just doesn't make sense, you cannot explain it rationally, and that is all you can say, it just doesn't add up."

With reference to Instruction No. 17 we hold there is sufficient evidence shown in the record to justify the trial court in submitting to the jury the second paragraph of Instruction No. 17.

We affirm the case.—Affirmed.

All JUSTICES concur.