Lee MARTIN and Leo Martin, Appellees,

v.

Jake JAEKEL and Gulf Oil Company, doing business in Shenandoah, Iowa, Appellants.

No. 54457.

Supreme Court of Iowa.

June 17, 1971.

Thomas, McGee & Thomas, Glenwood, for appellants.

Davidson & Hemphill, Clarinda, for appellees.

MASON, Justice.

Lee Martin and his brother Leo, farm owners and operators, brought this law action to recover from defendants Jake Jaekel and Gulf Oil Company for the damage allegedly sustained to 137 acres of plaintiffs' milo and 10.6 acres of their grassland aerially sprayed by Gulf Oil with atrazine compound with additional chemicals June 10, 1967. Trial commenced the latter part of June 1969.

The case was submitted to the jury against those two defendants. After overruling defendants' motion for new trial judgment was entered against them on the $8500 verdict in favor of plaintiffs.

Defendants had filed cross-petition against Farmers Co-Operative Elevator Company. At the conclusion of all evidence the Co-Op was removed on motion as a party and the cross-petition dismissed by the court.

Correctness of this ruling is not challenged on this appeal as defendants limit their appeal to three assignments of error relied on for reversal. They contend the court erred in (1) restricting testimony and evidence as to the damage sustained; (2) refusing to give proper instruction on the measure of damages; and (3) refusing to submit the question of agency to the jury.

In their petition plaintiffs allege as a theory for recovery defendants negligently mixed and applied a chemical substance

which was the proximate cause of the damage to their milo and grassland.

Defendants in answer admitted the aerial spraying with a mixture they knew would be damaging to the crop. They also alleged they had warned plaintiffs through the Farmers Co-Op not to use the chemical except on a more matured crop; that by ordering a compound other than that recommended by defendants, plaintiffs had assumed the risk of damages, if any; and plaintiffs' contributory negligence barred their action for recovery. Defendants also alleged plaintiffs had a better crop of milo than they would have had if the aerial spraying had not been done.

We consider defendants' assignments other than in the order presented in written brief and argument.

I. Defendants contend a jury question was generated as to the existence of an agency between plaintiffs and the Co-Op manager, Glen Boylan and the court erred in not submitting the issue under proper instructions.

Boylan as manager of the Co-Op purchased fertilizers and chemicals from Gulf Oil as well as other companies and sold them at retail to farmers.

June 7, 1967 after hearing a radio broadcast advertising the Gulf Company's aerial spray service, Lee Martin went to the Co-Op in Blanchard to inquire whether Boylan knew anything about the spraying service. Boylan told Martin he didn't but would telephone the Gulf Company and find out. He talked to Jake Jaekel, territorial supervisor for Gulf Oil, and advised him Martin wanted atrazine for approximately 130 acres of milo. Later, defendants contacted Boylan and advised him of the date of spraying. When the crew arrived, Boylan took defendants' flagmen to the Martin farm and pointed out where to spray.

After the work was completed a statement for the Martin spraying was sent to the Co-Op. Boylan returned the bill advising Gulf the Co-Op would not be responsible for collecting their accounts. Gulf sent a later bill which would have permitted the Co-Op a profit for collecting. The Co-Op had not paid the bill at time of trial.

Plaintiffs tell us in written argument an "agency cannot be proven by the agent, but only by the principal." We do not agree. " * * * The testimony of an alleged agent is admissible to prove agency. 3 C. J.S. Agency § 322c(1). The rule which * * * [plaintiff] has in mind is stated in 3 C.J.S. Agency § 322c(1), as follows:

" 'In the absence of other evidence of agency, the extra-judicial declarations of an alleged agent to a third person are not admissible, over objection, against the alleged principal to prove agency * * *.' " Schroeder v. Cedar Rapids Lodge No. 304, 242 Iowa 1297, 1301, 49 N.W.2d 880, 882.

■ The burden of proving a principal and agent relationship is upon the party asserting such a relationship.

"An agency results from the manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to his control, and consent by the other so to act. * * * [citing authorities]

"An agency may be proven not only by direct evidence of an agreement between the parties but also by circumstantial evidence, such as their words and conduct, from which an intention to create an agency may be fairly implied. Brown v. Schmitz, supra, 237 Iowa 418, 424, 22 N.W.2d 340, 343, and citations. The question of whether there was a principal-agent relationship ordinarily is one of fact. Reed v. Bunger, supra, 255 Iowa 322, 329, 122 N.W.2d 290, 295, and citations." Pay-N-Taket, Inc. v. Crooks, 259 Iowa 719, 724, 145 N.W.2d 621, 624.

■ But, like other questions of fact there must be substantial evidence bearing on the existence of a principal-agent relationship to generate a jury question. A

mere scintilla is not enough. Nizzi v. Laverty Sprayers, Inc., 259 Iowa 112, 121, 143 N.W.2d 312, 317. We have also held it is error to submit an issue having no support in the record. Clubb v. Osborn, 256 Iowa 1154, 1160, 130 N.W.2d 648, 652 and citations.

The record viewed in the light most favorable to defendants on the issue of existence of a principal-agent relationship between plaintiffs and Farmers Co-Op compels the conclusion there is insufficient evidence to warrant the trial court in submitting the question of agency to the jury as trier of facts.

This assignment cannot be sustained.

II. Defendants contend the court gave an incorrect instruction on the measure of damages. This assignment is closely related to their other assignment in which defendants contend the court erred in restricting and limiting testimony on damages sustained to two weeks after the spraying.

Before commencement of trial plaintiffs filed a motion in limine in which they assert:

"That questions relative to the value of the crop should be limited to two weeks after the injury of the crop except estimation of yield and costs of maturing, harvesting and marketing at the time of harvesting."

Resistance was filed and June 18 the court sustained plaintiffs' motion and added, "except that all evidence with reference to the value of the crops saved may be offered."

We recount the attack on instruction 14 in which the jury was told:

"You are instructed with reference to the measure of damages as follows:

"As to the milo the measure of damages, if any, is the value of the growing crop in the field at the time of injury diminished by the value of that portion of the growing crop saved, *determined immediately after the injury,* such values to be based on estimated probable yield less cost of maturing, cultivating, harvesting, and marketing.

"As to waterways and pasture, the measure of damages, if any, is the fair market value of the acreage of such damaged waterways and pasture immediately prior to injury, less the fair market value of the acreage of such damaged waterways and pasture immediately following the injury." (emphasis supplied)

The final draft of the proposed instructions was given to counsel after completion of the arguments before the instructions were read and both parties were given opportunity to make objections and take exceptions.

At that stage defendants made the following record:

" * * * Defendant excepts and objects to instruction number fourteen on the measure of damages, contending that the measure of damages as set out in instruction fourteen is the measure of damages for total destruction of a growing crop, and it is without dispute in regard to this case that there has been only partial destruction of the growing crop. Defendant, therefore, excepts to said instruction and requests that the defendants' requested instruction on damages as filed * * * be substituted therefor."

The instruction requested by defendants as a substitute for instruction 14 provides:

"In regard to damage to the milo crop if the crop was not totally destroyed, you are instructed that the measure of damages is the value of the growing crop in the field at the time of the injury based upon estimated net probable yield if the crop had not been damaged, less the value of the growing crop saved and less the costs of maturing, cultivating, harvesting and marketing."

Defendants complain in this court the emphasized portion of instruction 14 set

out, supra, requires the jury to find the value of the crop saved by determining this value immediately after injury and this suggests they are not to consider what the crop actually yielded.

The errors combined for consideration in this division involve the measure of damages for injury to growing crops, the method of ascertaining such damages and evidence properly admissible on the damage issue.

Rule 196, Rules of Civil Procedure provides in pertinent part:

" * * * [A]ll objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal. * * *."

Andrews v. Struble, 178 N.W.2d 391, 399 (Iowa 1970) has this statement:

"It is incumbent on the objecting party to point out wherein he contends the instruction is wrong so that the trial court may have opportunity to correct it. * * * [citing authorities]."

█ Thus, the first question to be determined is whether defendants' objections made to instruction 14 at trial sufficiently alerted the trial court to preserve the question for review. In other words, did defendants' objection sufficiently point out to the court the complaint they now direct against the emphasized portion of instruction 14.

Defendants made no objections to the refusal of their requested instruction as required by rule 196, R.C.P. However, in view of the reference in the objection to the language of the request it may properly be considered as an aid in determining whether the trial court was properly advised as to the ground plaintiffs now urge. See In re Estate of Ronfeldt, 261 Iowa 12, 23, 152 N.W.2d 837, 844.

Defendants' objection at trial must be considered in light of the record as made at the close of all evidence. There was testimony that the crop was not completely destroyed and that there was a salvage. Leo Martin had given his opinion as to the value of the crop saved after the damage by the aerial spraying based on estimated probable yield less the costs of harvesting, cultivating, marketing and maturing. He testified the saved portion of the crop had a valuation of $4200.

Under this record we hold defendants' objection to instruction 14 sufficiently met the requirements of rule 196, R.C.P.

We now turn to the challenged instruction.

An examination of instruction 14 as given and the request reveals the main controversy is as to the point of time the jury is to determine the value of the undamaged portion of the crop. It seems clear the emphasized portion of instruction 14 limits this to a time immediately after the injury.

In Eppling v. Seuntjens, 254 Iowa 396, 402, 117 N.W.2d 820, 824, this court announced that the proper measure of damage for loss of growing crops is their value in the field at the time of injury or their value in matured condition less the reasonable expense of maturing and marketing. Since there is seldom a market for growing crops as such, by far the most widely accepted method of arriving at their value at the time of destruction is to estimate the probable yield if the crop had not been destroyed, calculate the value of that yield and deduct the value and amount of labor and expense that would have been required, but for their destruction, to mature, care for and market the crop.

Several Iowa cases, the annotation in 175 A.L.R. 159, 25 C.J.S. Damages § 85 b and 15 Am.Jur., Crops, section 72 (21 Am. Jur.2d, Crops, section 75–76), are cited in the opinion as support for the above pronouncement which was approved in Witt-

hauer v. City of Council Bluffs, 257 Iowa 493, 502, 133 N.W.2d 71, 77.

■ It is apparent, as defendants contend, the principle stated in Eppling was concerned with total destruction of a growing crop. The method of ascertaining damages announced there is the one to be followed in the event of total destruction. See 21 Am.Jur.2d, Crops, sections 75–76. No reference is made in the Eppling opinion for considering the salvage value of a partially destroyed crop. The point was not involved.

■ On the other hand, the measure of damages for injury to or partial destruction of a growing crop is the difference between the value of the crop immediately before and its value immediately after the injury or partial destruction. The most generally approved method of ascertaining damages for such crop injuries is to take the value at maturity which the probable crop would have had but for the injury, deduct the value which the injured crop actually had at maturity, and deduct further any reduction in amount and value of labor and expense attributable to the reduced yield. See 21 Am.Jur.2d, Crops, sections 78–79. 25 C.J.S. Damages § 85 b is to the same effect. See authorities collected in these two encyclopedias.

In case of either total destruction or partial injury the question is what that crop would have produced that crop year but for the damage caused.

In the emphasized portion of instruction 14 the court correctly told the jury the point in time the "after value" of the damaged crop was to be fixed. This is in accord with Martin v. Schwertley, 155 Iowa 347, 354, 136 N.W. 218, 221, 40 L.R.A.,N.S., 160 where plaintiff was a tenant for the one year only, and the corn in question was greatly injured although not totally destroyed by the water complained of, it was considered that the measure of damages was the difference in the crop value immediately before and immediately after the flooding. It is also in agreement with what the authors of the annotation in 175 A.L.R. at 186 say is the principle in most jurisdictions for ascertaining the measure of damages for injury to or partial destruction of a growing crop. It also finds support in Cross v. Harris, 230 Or. 398, 404–408, 370 P.2d 703, 707–708.

■ However, in the remaining portion of the first paragraph of instruction 14 the court told the jury such values (value of the growing crop in the field at the time of the injury diminished by the value of the portion of the crop saved) were to be based on estimated probable yield less cost of maturing, cultivating, harvesting and marketing. The measure of damages is one thing, method of ascertaining recovery thereunder in a particular case another. The jury should have been told the value of the growing crop in the field at the time of injury was to be diminished by the value which the injured crop actually had at maturity. Instruction 14 as given is subject to defendants' challenge.

What we believe to be the correct method for arriving at the amount of recovery in cases of partial injury or destruction of a growing crop is well stated in Cross v. Harris, 230 Or. at 406, 370 P. at 707, in this language:

"The measure of damages in a case of injury to growing crops is the difference between the value of the crop immediately before and immediately after the injury, to be ascertained by taking the value at maturity which the crop would have had but for the injury and deducting the value which the injured crop actually had at maturity and deducting, further, any reduction in amount and value of labor and expense attributable to the reduced yield. * * * [citing authorities]."

Trahan v. Bearb, La.App., 138 So.2d 420, 422 and Sharp v. Gianulakis, 63 Utah 249, 252–253, 225 P. 337, 339 contain similar statements of the proper method.

The annotation in 175 A.L.R. at 185 has this pertinent statement: The distinction between the measure of damages and the method of ascertaining recovery thereunder in a particular case can always be made academically, and it can also be made with practical force where the effect of mistaking the method for the rule would be to free plaintiff of the risks of weather and season to which the growing crop was subject. To take the value of the crop, assuming it to have matured without further loss from weather, is to begin at the wrong place, prejudicially to the defendant.

Nothing we have said today is to be taken as detracting from the pronouncement made in Eppling v. Seuntjens relied on by the trial court.

The cases are factually distinguishable.

The fault in the instruction when considered in light of the court's ruling on one phase of defendants' offer of proof requires a reversal.

■ Defendants stated in this offer of proof two of their witnesses, if permitted, would testify they examined the fields involved September 29, 1967. They stated one of the purposes of such testimony would be to refute and rebut testimony previously given by Leo Martin and his witnesses. The offer was denied. We assume defendants were referring to Martin's testimony and that of other plaintiff-witnesses as to their opinion of the value of the crop saved. Any competent testimony tending to meet plaintiffs' testimony in this respect would be material and relevant provided, of course, the witnesses could be qualified as experts by a proper foundation in accordance with the decisions of this court.

■ Exhibit 29 which was included in the offer and appears to be a detailed summary or report of these witnesses was denied. It is hearsay and defendants do not point out the exception to this rule which would make the report admissible. The court did not err in excluding the exhibit.

■ Another purpose of the offered testimony was stated to be its use in mitigation of damages. Under this record the court did not err in refusing the offer for this purpose. See Nizzi v. Laverty Sprayers, Inc., 259 Iowa at 121–122, 143 N.W.2d at 317–318.

The broad spectrum of facts which may be admissible in ascertaining damages is presented in United States Smelting Co. v. Sisam, 191 F. 293 (8 Cir.).

The pertinent part of this opinion is repeated in 175 A.L.R. 195–196.

It does not appear from the record the court's ruling denying defendants' offer of proof tending to refute plaintiffs' evidence as to the value of the damaged crop at maturity was based on the court's ruling on plaintiffs' motion in limine set out, supra, particularly in view of the exception added by the court in its ruling on this motion.

Although the offer of proof is not as definite as it should be in this respect, defendants should have the opportunity to offer evidence which might reasonably serve to refute opinion testimony as to the value of the injured crop.

The case is

Reversed.

All Justices concur except REYNOLD-SON, J., who takes no part.