**ELKADER COOPERATIVE COMPANY,**
Appellee,

v.

**Francis MATT, Appellant.**

No. 55174.

Supreme Court of Iowa.

Feb. 21, 1973.

**874**

Fuerste & Carew, Dubuque, for appellant.

Donohue Law Office, and J. S. Updegraff, West Union, for appellee.

LeGRAND, Justice.

This case involves the distinction between an oral agreement which is itself a contract and one which is only preliminary to a written contract to follow.

Plaintiff Elkader Cooperative Company (the Cooperative) buys corn from farmers for future delivery. It immediately resells the corn for a two-cent per bushel markup to the Farmers Grain Dealers Elevator at McGregor, Iowa (the Elevator). Defendant Francis Matt, a farmer, was familiar with this practice, having sold corn to the Cooperative in earlier years.

Under the evidence, the jury could have found that in the fall of 1968 Matt telephoned the Cooperative on three occasions and talked with the manager, Robert B. Murrell. The first two conversations were mainly inquiries about the price of corn. Concerning the third conversation, Murrell testified:

"On the third telephone call, the first thing I said to Mr. Matt was to state what the price of corn was at that time. What he could contract for on that day. I told him the price was such as to net him 89 cents * * *. I think we discussed some terms * * * and he finally decided and said, 'I will contract 15,000 bushels of corn.' * * * After Mr. Matt said he wanted to sell this corn, I repeated the terms, 89 cents, No. 2 corn delivered to McGregor and confirmed it with him and told him, asked him if he would stop over in a few days and sign the contract on it and he indicated that he would. * * * *"

Murrell immediately filled out the terms of the purchase from Matt on one of the contract forms the Cooperative uses. At that time or by the next morning he wrote on the form "Confirmed by phone—9–11–68." He also promptly sold 15,000 bushels of corn by telephone to the Elevator for 91 cents per bushel.

That fall the price of corn did not hold steady or decline as the crop was picked but went up. Matt did not go to the Cooperative and sign the contract nor did he deliver corn under the agreement claimed by the Cooperative, although requested to do so. Instead he sold it elsewhere at a higher price.

The Cooperative performed its contract to sell corn to the Elevator at 91 cents per bushel by delivering 8000 bushels of its own corn, then worth $1.08 per bushel, to the Elevator, and by paying the Elevator on the other 7000 bushels the difference between the current market price and the price for which it had earlier agreed to sell to the Elevator.

The Cooperative sued Matt for the loss thus sustained. The jury found for the Cooperative, and the trial court entered judgment. Matt appealed. We reverse and remand for a new trial.

Matt makes two contentions in this court: (1) the trial court should have sus-

tained his motion for a directed verdict on the ground the Cooperative introduced no evidence that the oral agreement between the Cooperative and Matt was to be a contract, as distinguished from mere negotiation preliminary to the execution of a written contract, and (2) the trial court should have instructed the jury on the significance of the parties' intention as to whether the oral agreement or the writing was to be the contract. The statute of frauds is not involved in the appeal.

■■ I. We hold Matt was not entitled to a directed verdict. It is generally held an oral agreement may be enforceable, even though the parties contemplate that it be reduced to writing and signed, if it is complete as to its terms and has been finally agreed to. Under such circumstances the writing is merely an expression of a contract already made. On the other hand, the parties may intend that obligation should arise *only* upon the signing of a written instrument embodying the terms they have tentatively agreed to. Alpen v. Chapman, 179 N.W.2d 585, 588, 589 (Iowa 1970); Luse v. Waco Community School District, 258 Iowa 1087, 1092, 141 N.W.2d 607, 610 (1966); Restatement, Contracts, section 26 (1932); 17 Am.Jur.2d, Contracts, sections 28, 29 (1964); 17 C.J.S. Contracts § 49 (1963).

The intention of the parties is decisive on this issue—did they *intend* the oral agreement to be binding or not? This fact question is dependent upon all the circumstances present in the particular case. Alpen v. Chapman, supra; 17 Am.Jur.2d, Contracts, section 29 (1964); Annot., 100 A.L.R. 969, 989 (1936); Restatement, Contracts, section 26, Comment (b) (1932).

■ On the record before us, there were circumstances justifying a finding the oral agreement was to bind the parties. There were opposing facts which would sustain a contrary conclusion. As the trial court correctly held, this made out a jury case, and Matt was not entitled to a directed verdict.

II. The discussion in Division I leads directly into Matt's second assignment of error. He complains of the trial court's refusal to instruct on the intention of the parties relative to the telephone conversation which the Cooperative now claims constituted a completed and enforceable contract. Matt argues he was not obligated because he had not signed an agreement to sell. He made this objection to the instructions:

"Defendant excepts to the instructions as a whole and particularly as to Instruction 4 thereof as it relates to the general discussion by the Court of the law of contract for the reason that nowhere in the instructions does the Court advise the jury as to the significance of the elements of intent to be found or not found by them from the evidence as the same establishes or does not establish the existence of a contractual relationship between the parties. The instructions in their present form omitting any reference to or instruction concerning the matter of intent of the parties is particularly prejudicial to the defendant in this matter because of the nature of the evidence claimed by plaintiff to establish the existence of a contract and the nature of the evidence of defendant establishing ignorance of any contract. The instructions as a whole are deficient in this matter of tying the element of intent of the parties to the legal requisites of the contract and the factual showings of the parties relative thereto."

We believe the objection is well taken unless it fails to meet the requirements of rule 196, Rules of Civil Procedure, a question which we pass for the moment.

■ The instructions failed to relate intention to the particular circumstances important to a decision by the jury. At the conclusion of the evidence, it was quite evident the result must turn on the narrow question whether the parties intended the telephone conversation to constitute a binding contract or not. As we have already

pointed out, there was evidence supporting both sides. Yet the jury was left with nothing but an abstract definition of contractual intent which could be of no help in solving the controversy before them. We have said several times instructions should apply the law to the facts of the particular case sufficiently to advise the jury on the real issues they must resolve. We believe the instructions here fell short of that goal. Nowhere do the instructions touch on the rather nice distinction between an oral agreement which is to be obligatory without a later signing and one which is not—the very heart of the lawsuit. Baker v. Wolfe, 164 N.W.2d 835, 839 (Iowa 1969); Gibbs v. Wilmeth, 261 Iowa 1015, 1021–1023, 157 N.W.2d 93, 97 (1968).

We return to the argument that Matt's objection to the instructions is inadequate under rule 196 to encompass the error now charged. Under that rule, of course, only those grounds urged in the trial court may be relied on here. We hold the objection was sufficient.

In Harrington v. Fortman, 233 Iowa 92, 101, 8 N.W.2d 713, 718 (1943), it was urged requested instructions were insufficient to preserve the error claimed on appeal. We there said, "Even if this should be true, * * * it does not avail the appellees. [The requested instructions] were sufficient to arrest the attention of the court and call for proper instructions. (Citations)"

In Schall v. Lorenzen, 166 N.W.2d 795, 798 (Iowa 1969), appears this statement:

"In passing on the sufficiency of the record where a requested instruction has been refused we have held the question is not whether the requested instruction is technically perfect but whether the attention of the court has fairly been called to the problem so that he may correctly instruct the jury. (Citations) *This is the proper standard in connection with evaluation of any exception to the instructions.*" (Emphasis supplied.)

In one of our most recent cases on this subject, Martin v. Jaekel, 188 N.W.2d 331, 335 (Iowa 1971), we restated the general principle that the real question is whether the objections made "sufficiently alerted the trial court to preserve the question for review. In other words, did defendant's objection sufficiently point out to the court the complaint they [now directed against the instructions.]"

It is argued Matt is foreclosed here because, in addition to objecting, he should have also requested a correcting instruction. Under the record before us, we disagree. The trial court has the duty to instruct fully upon the issues which the jury must decide, whether requested to do so or not. It is error to submit the case without adequate direction to the jury on matters of law. The ultimate question is not *how* the alleged error was raised at trial but whether it *was* raised—either by objection or by request for instruction—so that the trial court was alerted to the real problem while it was still possible to correctly instruct the jury. This is abundantly clear from Vint v. Ashland, 258 Iowa 591, 600–602, 139 N.W.2d 457, 463 (1966).

In Law v. Hemmingsen, 249 Iowa 820, 826, 89 N.W.2d 386, 391 (1958), this appears:

"It is the court's duty to instruct with reasonable fullness on the issues, and a mere abstract definition of a term, having no application to the particular controversy, is insufficient. the instructions afford the only guide the jury has for correct application of the law to the facts. (Citations)"

While it is true in Law v. Hemmingsen, supra, there were requested instructions, we have said the same thing in cases where requests were not made. In Gardner v. Johnson, 231 Iowa 1233, 1235, 3 N.W.2d 606, 607 (1942), there were no requested instructions. We held it was error to omit

instructing upon the real issues in the case. There we said:

"We hold that the trial court, even in the absence of a request, should have explained the meaning of consideration as used in this case and given the jury some guide by which to apply the law to the evidence.

* * * * * *

"The single issue in the case was that of consideration. Merely to give the jury an abstract definition of the term, having no application to this controversy, did not enable the jury to return an intelligent verdict. The doctrine relied upon by appellee that correct instructions are sufficient in the absence of request for amplification is not applicable here. It is the trial court's duty to see that the jury was a clear and intelligent understanding of what it is to decide, and failure to instruct with reasonable fullness, even in the absence of request, is error. The instructions afford the only guide the jury has for the correct application of the law to the facts. (Citations)"

We said the same thing in Sanford v. Nesbit, 234 Iowa 14, 18, 11 N.W.2d 695, 697 (1943). Objection was made to the giving of certain instructions because "they were a bare statement of the statute without further instruction on the reciprocal rights and duties of the parties."

Although defendant in Sanford v. Nesbit had requested instructions, we said:

"We feel compelled to hold that defendant's exceptions to these instructions must be sustained. It is the trial court's duty to see that the jury has an intelligent understanding of what it is to decide and failure to instruct with reasonable fullness, even in the absence of request, is error. The instructions afford the only guide the jury has for the correct application of the law to the facts. * * * The doctrine that a correct instruction is sufficient in the absence of request for application is not applicable here.

* * * * * *

"Here there was no attempt in any of the instructions to furnish the jury any guide by which to apply the law to the facts. The instructions, for the most part, are form instructions without any particular applicability to this rather simple controversy."

The principle is reiterated in Hartford Fire Insurance Co. v. Lefler, 257 Iowa 796, 803, 135 N.W.2d 88, 92, 93 (1965).

We believe these authorities are controlling. In view of the evidence, Matt's objection could reasonably relate only to the intention of the parties at the time of the vital third telephone conversation. There was no other issue in the case. As we pointed out in Martin v. Jaekel, supra, objections to instructions at trial must be considered in light of the record as made at the close of the evidence. (188 N.W.2d at 335.) Using this standard, we are convinced the objection was sufficient to alert the trial court on this matter of overriding importance. We hold it was reversible error not to instruct the jury on the law of contractual intent as applied to the evidence before them. We further hold Matt is entitled to a new trial, and the case is therefore reversed and remanded.

Reversed and remanded.

All Justices concur, except MOORE, C. J., and UHLENHOPP and McCORMICK, JJ., who dissent.

UHLENHOPP, Justice (dissenting).

Matt contended at trial that no agreement was made at all. He also contended that if an oral agreement was made, it merely constituted preliminary negotiation to a written contract to follow.

On the subject of contracts generally, the trial court stated in instruction 4:

You are instructed that, for the purposes of this case, a contract is defined as an agreement between two parties, by

which each party agrees to do a specified thing or things, or to perform a specified act or acts. [The instruction continued regarding consideration and mutual promises as a contract.]

On the specific problem of preliminary negotiation as distinguished from a contract to follow, the trial court stated as part of instruction 5:

An oral contract is to be distinguished from oral negotiations or discussions which are preparatory to or part of the preliminary dealings of the parties attempting to reach an oral or a written contract. If you find that the oral communications of the parties, if and as shown by the evidence in this case, were only oral negotiations or discussions which were preparatory to or part of the preliminary dealings of the parties attempting to reach an oral or a written contract, then no contract would have been established as claimed.

Among other exceptions, Matt took the following one which the trial court overruled and on which Matt now relies:

Defendant excepts to the instructions as a whole and particularly as to Instruction 4 thereof as it relates to the general discussion by the Court of the law of contract for the reason that nowhere in the instructions does the Court advise the jury as to the significance of the elements of intent to be found or not found by them from the evidence as the same establishes or does not establish the existence of a contractual relationship between the parties. The instructions in their present form omitting any reference to or instruction concerning the matter of intent of the parties is particularly prejudicial to the defendant in this matter because of the nature of the evidence claimed by plaintiff to establish the existence of a contract and the nature of the evidence of defendant establishing ignorance of any contract. The instructions as a whole are deficient in this matter of tying the element of intent

of the parties to the legal requisites of the contract and the factual showings of the parties relative thereto.

Since the jury by its verdict for the Cooperative must have found an agreement was made, Matt does not in this court press the contention that such agreement was not made, and frankly states that "R. C.P. 344f(2) commands us to view the evidence here in the light most favorable to the plaintiff-Appellee Cooperative". But Matt assigns as error, and argues at length, the failure of the trial court to instruct on intent of the parties as to "whether the orally negotiating parties were bound before signing the writing it was claimed he agreed to sign".

In the statement of the case in his brief, Matt says this:

Defendant further excepted to the failure of the Court to instruct the jury as to the element of intent of the parties *as to whether their relationship was to become contractually binding with or without signing a written contract.* (Italics added.)

And he states his second assigned error thus:

Even if the alleged oral contract of the parties in the corn transaction claimed should have been submitted to the jury, the trial court erred in not instructing as to the vital significance of the intention of the parties, *as to when, or if, they contemplated they would be contractually bound, whether a writing was or was not signed*; the trial court erred in overruling Defendant-Appellant's exceptions to the instructions and its motion for new trial based on this deficiency. (Italics added.)

The difficulty is that the italicized portions of the statement of the case and of the second assigned error are not contained in the exceptions taken in the trial court. Those italicized portions constitute the heart of the second assigned error; they

are the "deficiency" Matt now urges. The exception did not mention the parties' intent "as to whether their relationship was to become contractually binding with or without signing a written contract"—the point Matt now urges. The exception taken dealt with intent generally in the making of contracts and expressly called the trial court's attention to Matt's evidence establishing ignorance of "any" contract. As to intent in the making of contracts generally, see 17 Am.Jur.2d Contracts § 18 at 354; 17 C.J.S. Contracts § 31 at 635. As to intent on the distinct issue of determining whether an oral agreement or a writing is to be the contract, see 17 Am. Jur.2d Contracts § 28 at 363; 17 C.J.S. Contracts § 49 at 695.

Had Matt excepted in the trial court on the ground that the instructions did not cover the parties' intent "as to whether their relationship was to become contractually binding with or without signing a written contract," and especially had he called the trial court's attention to instruction 5 in which the court dealt with the subject of negotiations as distinguished from a contract itself, then he would have raised the same point in the trial court which he argues here as the important part of his second assigned error. We do not know and cannot say that the trial court would not have incorporated the point for which Matt now contends had Matt stated the point in his exception as he presents it to us.

This court has spoken on the present problem regarding exceptions. The court stated in Wilson v. Kouri, 255 Iowa 348, 352–353, 122 N.W.2d 300, 302:

The criterion is whether the exception taken alerted the trial court to the error which appellant is now urging. *Appellant has gone one step beyond the exception taken to the instruction prior to its submission to the jury. The important part of the contention now urged by appellant was not mentioned in the exception.* (Italics added.)

The court has also stated that "the complaining party must point out clearly to the trial court what he objects to in the instruction and why; and *his rights on appeal will be measured thereby, and cannot be extended."* (Italics added.) Jurgens v. Davenport, R. I. & N. W. Ry., 249 Iowa 711, 718, 88 N.W.2d 797, 802. See also Andrews v. Struble, 178 N.W.2d 391, 399 (Iowa) ("It is incumbent on the objecting party to point out wherein he contends the instruction is wrong so the trial court may have opportunity to correct it.").

Matt's second assignment of error goes a step beyond the exception taken and should not be considered.

MOORE, C. J., and McCORMICK, J., join in this dissent.